Dearl **FLOWERS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–88–00352–CR.

Court of Appeals of Texas, El Paso.

Feb. 14, 1990.

Discretionary Review Granted May 30, 1990.

G. David Smith, Dallas, Charles Louis Roberts, El Paso, for appellant.

Gary Garrison, Dist. Atty., Odessa, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a jury conviction for second degree felony theft. The jury assessed punishment at imprisonment for four years. We reverse.

Appellant was charged by indictment with theft of oil field equipment under Tex. Penal Code Ann. sec. 31.03(a), (b)(3) and (e)(5)(A)(ii) (Vernon 1989). The prosecution arose out of an oil field "sting" operation conducted by the Texas Department of Public Safety, utilizing pipe loaned to DPS by Texaco, Inc. An undercover Special Texas Ranger negotiated a sale of this pipe to the Appellant, allegedly characterizing it to Appellant as pipe stolen from Texaco.

Points of Error Nos. One through Five challenge the process by which the original grand jury indictment was amended with leave of court over defense objection. This action was initiated by the State in response to motions to quash the original indictment. There were three changes in the charging instrument which are contested by the Appellant. First, the statute requires that the law enforcement agent "explicitly" represent to the defendant that the property is stolen. Section 31.03(b)(3). The original indictment alleged "express" representation. The amendment substituted the statutory term "explicit" for the original averment of "express." Secondly, the amendment changed the alleged owner from "The State of Texas" to one "George Autrey," apparently a representative of Texaco. Finally, the amendment added the

allegation, as required by the statute, that Appellant "did appropriate the property believing it was stolen by another, . . . ."

At the outset, we will briefly dispose of those aspects of Appellant's complaints which we find to be without merit. First, Appellant contends that regardless of the propriety of the specific changes, the amendment of the indictment was ineffective because the record only contains an order granting the right to amend without any such amendment then being actually filed. Appellant relies upon *Robins v. State*, 9 Tex.Crim. 666 (1880); *Turner v. State*, 7 Tex.Crim. 596 (1880) and *Cox v. State*, 7 Tex.Crim. 495 (1879). The order in this case does not simply grant leave to file an amendment, it actually executes the amendment, setting out the entire charging instrument as amended. We can perceive of no more significant effectuation of the amendment short of returning to the grand jury, a process sought to be avoided in proper instances under Tex.Code Crim.Pro. Ann. art. 28.10 (Vernon 1989). Point of Error No. Four is overruled.

In addition, we find no error in the substitution of "explicit" for "express" in the amended indictment. We find the terms sufficiently synonymous to avoid any violation of Article 28.10(c). In that regard, Points of Error Nos. One, Two and Three are overruled.

Turning to the other two changes in the indictment, we conclude that these were not susceptible to amendment under Article 28.10. We realize that this places our opinion in conflict with positions taken by two other Courts of Appeals. See *Sonnier v. State*, 764 S.W.2d 348 (Tex.App.—Beaumont 1989, no pet.) and *Byrum v. State*, 762 S.W.2d 685 (Tex.App.—Houston [14th Dist.] 1988, no pet.).

Article 28.10 was amended effective December 1, 1985, to permit in certain circumstances the amendment of indictments as to both form and substance. In the present case, pretrial amendment under Section (a) was invoked. The amendment

of Article 28.10 was to become effective only upon voter approval of an amendment to Article V, sec. 12 of the Texas Constitution, authorizing the legislature to provide statutory procedures for amendment of the contents of indictments. *Sonnier,* 764 S.W.2d at 350. The constitutional amendment was approved in November 1985, thereby triggering the effective status of the revised Article 28.10. Nonetheless, Article I, sec. 10 of the Texas Constitution still precludes bringing a person to trial except upon indictment by a grand jury. [Except upon waiver under Tex.Code Crim. Pro. art. 1.141 (Vernon 1977)]. Thus, the two constitutional provisions must be read in harmony, and present Article 28.10 must be read in light of the harmonious construction—subject to both Article I, sec. 10 and art. V, sec. 12. The statutory key to such harmony is embodied in Article 28.10, sec. (c), that portion of the statute which acts as a restraint upon the expansive application of amendment authority flowing from Article V, sec. 12 and the statutory sec. (a). In other words, sec. (c) must be read to reflect the requirements of Article I, sec. 10.

Section (c) of the statute precludes amendment of form or substance over defense objection in two instances: (1) if the amendment results in the defendant being confronted with an additional or different offense or (2) if the substantial rights of the defendant are prejudiced. After having generated one hundred years of case law, distinction between amendments of form and substance under former Article 28.10, Texas courts must now shift to a determination of what constitutes a "different" offense from that originally charged and when are substantial rights of a defendant prejudiced by amendment of the charging instrument. Additionally, is the same appellate standard and method of review to be applied in each of these latter two situations?

■ The two indictment changes presently under consideration involve: (1) alleging a different complaint from the one al-leged by the grand jury (*Compare Sonnier*) and (2) adding a statutory element of the offense omitted from the indictment returned by the grand jury (*Compare Byrum*). We will first address the change in the complainant allegation. In overruling such a point of error in *Sonnier,* the Ninth Court of Appeals first construed the "different offense" language of Article 28.10(c) in the narrowest and most literal fashion possible, i.e., a different type of category of offense under the Penal Code. In that case, the defendant was charged with aggravated robbery. From the few facts presented in the opinion, he allegedly robbed a jewelry store owned by one Betty Holberg, the owner alleged in the grand jury indictment with regard to the property which was the object of the robbery offense. The amendment substituted one Bruce Poland (a witness and presumably on-duty employee of Holberg) as the alleged owner. One cannot tell from the published opinion who was alleged to be the victim of the assaultive component of the robbery offense. In any event, the Ninth Court concluded that the change in ownership allegation only affected one of the theft sub-elements of the aggravated robbery charge. Since the defendant continued to be charged with *an* aggravated robbery, no different offense was presented by the amendment. The appellate court noted that their analysis did not address issues of adequate notice, jeopardy and the constitutional right to grand jury "screening." The opinion expresses the belief that those issues are only cognizable in connection with a complaint under the second limitation imposed by Section (c), i.e., prohibiting prejudice to the substantial rights of the defendant. Since that precise complaint was not lodged in the trial court, the Ninth Court declined to discuss those aspects of the indictment's amendment, resting the decision on the merits solely on what we believe is a narrow, mechanical interpretation of what "different offense" means.

We are not so procedurally "fortunate," our Appellant having preserved complaints

under both aspects of Section (c). Regardless, we do not agree with the method of analysis employed in *Sonnier*. Since we construe the limitations of Section (c) as an essential embodiment of a defendant's constitutional rights under Article I, sec. 10, we do not consider it appropriate to adopt arbitrarily the most narrow and restrictive interpretation of its language. There is no aspect of indictment law which does not involve issues of notice and the right to grand jury assessment of probable cause as to each element of the offense. Omission of an essential substantive element of an offense may render an indictment void as "not stating an offense," but it is also deficient in notice to the accused and in demonstration that probable cause as to every necessary element for conviction was considered and found by the grand jury. At the other end of the spectrum are those indictments which track the statutory elements and language and are valid in the absence of a motion to quash, but which may necessitate further specification upon a meritorious defense motion seeking additional notice to prepare a defense or lodge a subsequent plea in bar to further prosecution. These latter indictments may be said to suffer solely from a notice defect. Adequate notice is a critical issue in virtually every indictment challenge. We cannot agree with the pigeon-hole analysis in *Sonnier* which relegates consideration of notice rights and rights under Article I, sec. 10 only to complaints under the substantial rights limitation of Article 28.10(c).

■■■ One who, on the eve of trial, is confronted with an amendment which changes a substantive element of the original indictment *so as to alter the potential legal theories involved or the nature of the proof to be presented* is certainly confronted with a lack of notice and deprivation of his right to grand jury review. These consequential issues do not pose a different trial objection or appellate complaint under Article 28.10(c). These issues are an integral part of the determination of whether or not a "different offense" is now

charged. Such issues must be considered under oath of the limitations set out in Article 28.10(c). What then is the difference between these two limitations? We conclude that they roughly correspond to the preexisting distinction between fundamentally defective indictments and those suffering solely from notice defects. We also conclude that while issues of notice, ability to plead the resulting judgment in bar to further prosecution and right to grand jury indictment must be considered under each limitation, such issues are to be viewed prospectively from a pretrial standpoint when the complaint is that an additional or different offense is now charged. On the other hand, in order to determine an alleged violation of the second limitation precluding prejudice to the substantial rights of the defendant, such issues should be assessed by the appellate court from a retrospective or post-trial viewpoint, considering the record as a whole to determine the actual existence of such prejudice. In the latter case, the review would follow the approach reflected in *Adams v. State*, 707 S.W.2d 900 (Tex.Crim.App.1986).

As a consequence of the foregoing interpretation of Article 28.10 and the appropriate standards of appellate review thereunder, we disagree with the position taken in *Sonnier*. Under a "different offense" complaint, we would not look retrospectively to the entire post-trial record even to notice that, despite a different date and different complainant, both the original and amended indictments address the same alleged criminal conduct, incident or transaction. We also do not read "different offense" as narrowly and literally. Under the *Sonnier* rationale, as long as the same type of offense is alleged, an amendment over objection is permissible even if it relates to a completely different incidence of such an offense and the defendant does not carefully invoke both the first *and* second limitations of Article 28.10(c).

We also reject the State's present definition of different offense which is certainly less extreme than that reflected in *Sonni-*

*er.* The State suggests that despite changing the name of the complainant, no new or different offense is alleged by the amendment because, in reality, it is merely giving an alternative culpable description of the same incident—substituting one kind of provable special owner for another. Once again, that conclusion necessitates a retrospective consideration of the post-trial evidentiary record which we believe is inappropriate under the first limitation of Article 28.10(c). We wholeheartedly agree with the general trend to extend "whole record" review to more and more types of asserted error. It is appropriate to focus appellate attention on actual harm to defendants, rather than abstract, theoretical or hypertechnical injuries. Nonetheless, in the case of fundamental changes in the substantive elements of an indictment which pose new or different legal theories of liability and different modes of proof, there is still a justification for preserving the indictment's function as a grand jury blueprint for the legal and factual development of the case at trial. A defendant is still entitled to be able to prepare his defense on the basis of the plain, intelligible accusation lodged by the grand jury. It is not sufficient to say that he already knew the theories and proof ultimately pursued during the trial as reflected by a retrospective examination of the entire record. *McManus v. State,* 591 S.W.2d 505 (Tex.Crim. App.1979). That principle can be preserved in the context of a "different offense" complaint under Article 28.10(c) only by assessing the requisite statutory elements of the offense, the substantive averments in the true bill of the grand jury and the proposed amendments from a prospective, pretrial standpoint.

■ From a prospective standpoint in this case, based only on the allegations in the indictment, we know only that a different owner is alleged. Ownership is unquestionably an essential statutory element of the offense and is intimately connected to the pleading and proof of intent to deprive the owner, another essential element.

A failure to allege ownership necessitates reversal. *King v. State,* 171 Tex.Crim. 34, 344 S.W.2d 693 (1961); *Talamentez v. State,* 123 Tex.Crim. 580, 59 S.W.2d 1084 (1933). Failure to prove ownership or ownership status *as alleged* results in reversal and rendition. *Walker v. State,* 591 S.W.2d 493 (Tex.Crim.App.1979). Of course, property which is stolen may have been subject to both true and special ownership, or several varieties of special ownership. In such a case, any valid form of ownership may be alleged, Tex.Code Crim. Pro.Ann. art. 21.08 (Vernon 1989), and the type of ownership need not be set out in the indictment. *Silva v. State,* 635 S.W.2d 775 (Tex.App.—Corpus Christi 1982, PDRR). The necessary legal theories and proof of ownership must, however, flow from the indictment relative to the owner alleged by the grand jury. As in any other case, it is not sufficient to show that some offense was committed; it is incumbent upon the State to prove the offense as alleged by the grand jury. In preparing to meet such legal theories and proof, the defendant is entitled to rely upon the indictment, augmented perhaps by discovery but certainly not cured of defects by discovery.

In *Araiza v. State,* 555 S.W.2d 746 (Tex. Crim.App.1977), the Court of Criminal Appeals overturned a conviction for burglary of a habitation. The indictment alleged the owner to be C.D. Loop. The proof at trial showed that Mr. and Mrs. C.D. Loop owned the house. At the time of the alleged offense, the Loops were out of the state and had left the house in the care of their two sons and two daughters-in-law. C.D. Loop did not testify and no proof was offered as to the lack of his consent for entry. Mrs. Loop and her son Leonard each testified that they had not consented to the defendant's entry. The appellate opinion reflects that the State could have alleged true ownership in Mrs. Loop which coupled with her testimony would have justified conviction. The actual progression, however, from pleading to proof resulted in a fatal variance and failure of proof, necessitating reversal. This result obtained de-

spite the fact that retrospectively, the whole world knew that the pleading and proof addressed the same incident, and that both the owner initially alleged and the two trial witnesses were equally susceptible to being alleged and proven to be non-consenting owners. The key to *Araiza* is the basic concept that the legal theories and proof necessary for conviction must flow from the indictment:

> The state has the burden of proving 'the allegation of ownership as laid in the indictment.' *Araiza*, 555 S.W.2d at 746.

Regardless of what may be alleged and proven for conviction under Article 21.08:

> It does not alter the state's burden to prove the facts that it does allege. *Araiza*, 555 S.W.2d at 747.

In *Araiza*, the State proved a "different offense" than what was alleged. To convict upon the testimony, as opposed to the indictment *and* the testimony, would have required different legal theories, different types of proof and different sources of proof.

We realize that *Araiza* is a pre–1985 sufficiency of the evidence case, not directly addressing amendment of indictments under present Article 28.10. Nonetheless, we find that *Araiza* reflects the critical criteria in defining "different offense" and emphasizing the prospective continuity which must obtain between the grand jury's indictment and the proof to be adduced at trial. Those aspects of *Araiza* are not vitiated by the amendment of Article 28.10 and are factors to be considered under either of the limitations imposed by Section (c). Accordingly, we conclude that the amendment of the indictment changing the allegation of the ownership violated Article 28.10(c) in light of the objections lodged in the trial court. Point of Error No. Five is sustained.

■ The foregoing analysis is equally applicable to the amendment adding allegation of Appellant's belief that the property he was accepting was stolen. This is a statutory element of culpability essential to conviction. In *Byrum v. State*, 762 S.W.2d 685 (Tex.App.—Houston [14th Dist.] 1988, no pet.), the defendant was charged with public lewdness, the misdemeanor information alleging contact with the "groin area" of the complainant's body. The State was permitted, under Article 28.10, to amend the pleading and substitute "genitals" in conformity with the penal statutes. Tex. Penal Code Ann. secs. 21.01 and 21.07 (Vernon 1989). Once again, the appellate court construed the complaint as solely relying upon the first limitation of Article 28.10(c). The court recognized that the original charging instrument did not state an offense in alleging contact with the "groin area." The opinion concluded that the prohibition of amendment over objection to allege an additional or different offense from that originally charged did not apply when the first charging instrument alleged no offense. As far as changing the pleading to a different offense, that may be literally correct, but as far as adding an offense by amendment, the court's conclusion does not seem even mathematically correct—zero plus one equals one reflects an addition process to us.

The court did go on to address the second prohibition under Article 28.10(c) and concluded that the amendment did not prejudice any substantial rights of the defendant. As a result of the amendment, the case was reset for trial over two weeks later, and the change in the allegation produced no surprise as to the anticipated testimony. Of course, there the court was dealing with an information and not an indictment giving rise to substantial rights under Article I, sec. 10 of the Texas Constitution.

In this case, we reach a different conclusion than that presented in *Byrum* for two additional reasons. Under the felony indictment process, permitting an amendment to add a previously omitted statutory element of the offense necessitates presumptions that the omission is merely a clerical error, that the grand jury recognized the necessity of such element, that

the grand jury considered evidence bearing on such element and that probable cause was found in that regard. Given the defendant's rights under Article I, sec. 10 of the Texas Constitution, we are not prepared to engage lightly in those collective presumptions.

Secondly, adopting a retrospective review of the record as a whole, under the second limitation of Article 28.10(c), we find that the evidence was most hotly contested on this very element of mental culpability. The statute requires that the law enforcement agent explicitly represent to the actor that the property is stolen and the actor must take possession actually believing that it is stolen. In this case, the State's best proof is that the agent, after negotiating the sale and while in the process of transferring the pipe, told Appellant that the merchandise was "ripped-off" from Texaco. Appellant testified that he was aware of the security at Texaco's lot, did not believe a theft was likely and thought the agent meant he obtained the pipe at a very good price. Other defense witnesses experienced in the equipment market testified that, depending upon the circumstances, "rip-off" could mean either theft or an economic "steal," albeit not a literal theft. Appellant correctly points out that the dictionary defines "rip-off" as either a theft or an economic windfall. We consider it a violation of Article 28.10(c) to supply an essential statutory element of the offense by amendment, over defense objection, especially when that element becomes the central issue of factual dispute at trial. Points of Error Nos. One, Two and Three are in this regard sustained.

Based upon the foregoing conclusions, the amendment was improper and the subsequent trial proceedings on the basis of such amendment were void. We, therefore, do not reach the remaining points of error with the exception of the assertion that Penal Code, sec. 31.-03(e)(5)(A)(ii) is unconstitutional on its face due to the ambiguity of the description of the property intended to be covered. Even

Appellant's quotation from his cited cases reflects that a penal statute is void for vagueness only when its alleged ambiguity encompasses the dividing line between innocent and proscribed behavior. *See e.g. United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Wells v. State*, 576 S.W.2d 857 (Tex.Crim.App.1979). Such a statute is not unconstitutionally vague simply because the actor cannot tell in advance what punishment range will obtain upon conviction and any ambiguity does not involve that portion of the statute which prohibits the conduct he is contemplating. *Earls v. State*, 707 S.W.2d 82, 86 (Tex.Crim.App.1986). The challenged subsection in this case relates only to the punishment range. Section 31.03 otherwise clearly prohibits the conduct with which Appellant was charged, regardless of the type of value of the property involved. Furthermore, we do not find the property description under challenge to be unconstitutionally vague. Similar property descriptions appearing elsewhere in the penal code have withstood constitutional scrutiny. E.g. Tex.Penal Code Ann. secs. 1.07(a)(11), 16.01(b), 28.01(1) and (2), 30.01(1) and (2), 30.03(a) and 46.01 et seq. (Vernon 1974, 1989 and Supp.1990). Point of Error No. Nine is overruled.

The judgment is hereby reversed, the order amending the grand jury indictment is hereby vacated and the cause is hereby remanded to the trial court.