**Dearl FLOWERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–88–00352–CR.**

Court of Appeals of Texas,
El Paso.

Dec. 22, 1994.

Rehearing Overruled Feb. 8, 1995.

---

**908**

G. David Smith, Dallas, Charles Louis Roberts, El Paso, for appellant.

John W. Smith, Dist. Atty., Odessa, for appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

Dearl Flowers appeals from a conviction for the offense of theft of oilfield equipment.

See Acts 1985, 69th Leg., R.S., ch. 599, § 1, 1985 Tex.Gen.Laws 2244, 2244–46, *amended by* Acts 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3638 [former TEX.PENAL CODE § 31.03(e)(5)(A)(ii) ].[1] Upon a finding of guilt, the jury assessed punishment at imprisonment for a term of 4 years. This Court has twice reversed Appellant's conviction; the Court of Criminal Appeals has twice reversed the decisions of this Court and remanded the case for consideration of Appellant's remaining Points of Error Nos. Four, Six, Eight, Eleven, Twelve, Thirteen, and Fourteen. See *Flowers v. State*, 785 S.W.2d 890 (Tex.App.—El Paso 1990), rev'd, 815 S.W.2d 724 (Tex.Crim.App.1991); *Flowers v. State*, 824 S.W.2d 801 (Tex.App.—El Paso 1992), rev'd, 843 S.W.2d 38 (Tex.Crim. App.1992). We affirm the trial court's judgment.

## I. AMENDMENT OF THE INDICTMENT.

In his fourth point of error, Appellant contends that his conviction is invalid because the trial court failed to physically alter the indictment after granting the State's motion to amend prior to trial.[2] See *Ward v. State*, 829 S.W.2d 787, 794–95 (Tex.Crim.App.1992) (in order to effectively amend indictment, any changes to the indictment must be made by physical alteration on its face). Appellant makes three different arguments with regard to the effect of the failure to effectively amend the indictment: (1) that there was a fatal variance between the ownership allegation contained in the indictment and the proof at trial; (2) that he was deprived of due process and notice by being prosecuted under a document that was not a valid charging instrument; and (3) that the trial court erred in presenting a charge to the jury which varied from the indictment.

The original indictment alleged, in pertinent part, that Appellant, on or about January 6, 1988, did then and there:

"[I]ntentionally and knowingly did unlawfully appropriate property, · namely ninety-two (92) joints of two and three eighths (2⅜) inch upset tubing, said property belonging to the State of Texas, hereinafter styled the Complainant and in the custody of a law enforcement agency, namely, the Texas Department of Public Safety, and expressly represented by a law enforcement officer, Special Texas Ranger Dick Chenault to the Defendant as being stolen, and said property being equipment designed for use in exploration and production of natural gas or crude petroleum oil, with intent to deprive the Complainant of the property, . . . ."

The order purportedly amending the indictment alleged that Appellant, on or about January 6, 1988, did then and there:

"intentionally and knowingly [did] unlawfully appropriate property, namely ninety-two (92) joints of two and three eighths (2⅜) inch upset tubing, said property [belonging to the State of Texas] *owned by George Autrey*, hereinafter styled the Complainant and in the custody of a law enforcement agency, namely, the Texas Department of Public Safety, and [expressly] *explicitly* represented by a law enforcement officer, Special Texas Ranger Dick Chenault to the Defendant as being stolen, *and the Defendant did appropriate the property believing it was stolen by another*, and said property being equipment designed for use in exploration and production of natural gas or crude petroleum oil, with intent to deprive the Complainant of the property, . . . ."

The brackets reflect the words deleted by the attempted amendment while the underlined portions reflect the additions sought to be made by the amendment.

The jury instructions and the application paragraph of the charge set forth the allega-

1. The recodification of the Texas Penal Code, effective September 1, 1994, eliminated theft of oilfield equipment as a separate category of theft.

2. This Court resolved this point of error on original submission in *Flowers I*, but due to an inter-

vening change in the law, the Court of Criminal Appeals encouraged Flowers to re-urge this point on remand. *Flowers*, 843 S.W.2d at 41 n. 4 (*Flowers IV*).

tions contained in the State's motion to amend the indictment rather than the allegations found in the original indictment.

### 1. *Sufficiency of the evidence*

■ The State, citing *Montoya v. State*, 841 S.W.2d 419 (Tex.App.—Dallas 1992, pet. granted)[3] and *McHenry v. State*, 841 S.W.2d 455 (Tex.App.—Dallas 1992, pet. granted),[4] argues that we must measure sufficiency of the evidence against the charge given. However, since the Dallas Court of Appeals decided these cases, the Court of Criminal Appeals announced new rules for measuring sufficiency of the evidence when the charge varies from the indictment. *Fisher v. State*, 887 S.W.2d 49 (Tex.Crim.App.1994) (not yet reported). Although *Fisher* did not involve an ineffective amendment of the indictment, its rules govern whether we may measure sufficiency of the evidence against the charge given. We find the sufficiency analyses employed in *Montoya* and *McHenry* questionable in light of *Fisher*, and we decline to follow them here.

The indictment in *Fisher* alleged that the defendant delivered more than 28 grams but less than 400 grams of amphetamine. However, the allegation concerning aggregate weight did not specify that the weight alleged included "adulterants and dilutants". As such, the State was required to prove that the controlled substance, in its pure form, weighed the amount alleged. See *Farris v.*

*State*, 811 S.W.2d 577 (Tex.Crim.App.1990); *Reeves v. State*, 806 S.W.2d 540 (Tex.Crim. App.1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). Nevertheless, over the defendant's objection, the charge permitted the jury to consider any adulterants or dilutants in determining whether the defendant had delivered more than 28 grams of amphetamine. See *Fisher*, 887 S.W.2d at 51–52. The evidence at trial showed that the amphetamine weighed a total of 59.32 grams, but because it was only 31 percent pure, just 18.38 grams were pure amphetamine. The Fort Worth Court of Appeals found that the jury instruction permitted the jury to convict Appellant on a theory not alleged in the indictment and held that the evidence was insufficient to convict Appellant of the offense alleged in the indictment. *Id.* at 52. The issue presented on discretionary review to the Court of Criminal Appeals was whether the Fort Worth Court of Appeals erred in measuring sufficiency against the indictment.

The Court of Criminal Appeals began its analysis by noting that our concept of reviewing sufficiency of the evidence is inextricably bound with due process principles of notice and opportunity to defend. *Fisher*, 887 S.W.2d at 52–53. It was established in *Benson v. State* that sufficiency of the evidence must be measured against the charge given. See *Benson v. State*, 661 S.W.2d 708 (Tex. Crim.App.1982) (opinion on State's second motion for reh'g). However, by stating in

---

**3.** In *Montoya*, the trial court granted the State's motion to amend the indictment to change the name of the complainant from "Lisa Brooks" to "Lora Brooks", but failed to alter the face of the indictment. Montoya attacked the sufficiency of the evidence due to the variance and also contended that the failure to amend the indictment amounted to trial error. *Montoya*, 841 S.W.2d at 422–23. The Court measured sufficiency of the evidence against the charge given, and found the evidence sufficient that Montoya sexually assaulted "Lora Brooks". *Id.* However, even though Montoya did not object to the purported amendment, and apparently did not object to the charge, the Court of Appeals found that the failure to effectively amend the indictment constituted trial error because the discrepancy between the indictment and charge allowed the jury to convict Montoya. Id. at 423.

**4.** In *McHenry*, the trial court granted the State's motion to amend, but failed to physically alter the face of the indictment. *McHenry*, 841 S.W.2d at 456. Because the application paragraph of the jury charge set forth the allegations contained in the State's motion to amend the indictment, McHenry contended that the evidence was insufficient to sustain the conviction when measured against the original indictment. Id. at 456–57. Noting that the appellant did not object to the charge at trial or complain of it on remand, the Court measured sufficiency against the charge given and found it sufficient. Id. at 458.

*Benson* that a reviewing court must compare "the evidence to the indictment as incorporated into the charge," the Court meant an indictment that has been properly incorporated into the instruction. *Fisher*, 887 S.W.2d at 57. It would violate due process for a reviewing court to analyze sufficiency based upon an instruction broadening the basis upon which the State could obtain a conviction under a facially valid indictment. *Fisher*, at 57.

The Court held that where the indictment facially alleges a complete offense (either initially or after amendment), the State is bound by the theory alleged in the indictment, as is the reviewing court in its sufficiency analysis. *Fisher*, at 56–57. If the instruction broadens the basis upon which the State can obtain a conviction, the reviewing court shall review sufficiency by comparing the evidence to the indictment as properly incorporated into the instruction, disregarding any language contained in the instruction which expands upon the theory set forth in the indictment. *Fisher*, at 57–58. The reviewing court may only disregard matters contained in the instruction that would normally have to be pled in the indictment, but were not. *Fisher*, at 57–58. A reviewing court may also measure sufficiency of the evidence against the charge given where the indictment does not on its face allege a complete offense, but the defendant does not object to the indictment, and the charge properly alleges all of the elements of the offense as determined by looking to the defective indictment and the controlling penal provision. *Fisher*, 887 S.W.2d at 57–58.

Following these rules, the Court found that the indictment was facially complete, but that the additional phrase "excluding adulterants or dilutants" contained in the jury charge broadened the basis upon which the State could obtain a conviction. *Fisher*, 887 S.W.2d at 60. Accordingly, the Court excluded the improperly added phrase from its sufficiency review and found the evidence insufficient. *Fisher*, 887 S.W.2d at 60. The Court rejected the State's contention that the case should be remanded for a new trial due to trial error since the State failed to object to the erroneous charge. *Id.* at 60–61, n. 17.

Applying *Fisher* to this case, we must first determine whether the indictment was facially complete. In order to charge the offense of theft, the State need only allege that the person (1) "unlawfully" appropriated property (2) with the intent to deprive the owner of the property. *Ex parte Luna*, 784 S.W.2d 369, 371 (Tex.Crim.App.1990); TEX.PENAL CODE ANN. § 31.03(a) (Vernon 1994).[5]

■ The indictment, which stated that Appellant "unlawfully appropriated property" adequately alleged the first element set forth above. The fact that the indictment went further than required and also alleged a portion of the Section 31.03(b)(3) definition of "appropriate"[6] does not render it incomplete since that definition is not an element of theft which must be alleged in the indictment. TEX.PENAL CODE ANN. § 31.03(b)(3) (Vernon 1994); see *Flowers II*, 815 S.W.2d at 727 (the Section 31.03(b)(3) definition of unlawful appropriation is not an element of the offense, but is an evidentiary matter that need not be alleged in order to sufficiently charge the offense of theft).

■ The indictment also alleged that Appellant acted with the intent to deprive the owner of the property. With regard to the ownership element, the indictment alleged that the property at issue 'belonged to' the State of Texas. The Penal Code defines

5. For convenience, we have cited to the current version of Section 31.03(a) because it does not differ from the version in effect at the time of Appellant's prosecution. We will follow this practice throughout the remainder of this opinion, but will indicate if the former version of the cited statute was numbered differently.

6. Under Section 31.03(b)(3), appropriation of property is unlawful if property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen, and the actor appropriates the property believing it was stolen by another. TEX.PENAL CODE ANN. § 31.03(b)(3) (Vernon 1994).

"owner" as a person[7] who: (A) has title to the property, *possession*[8] *of the property*, whether lawful or not, or a greater right to possession of the property than the actor. Tex.Penal Code Ann. § 1.07(a)(35) (Vernon 1994) [formerly Section 1.07(a)(24) ]. [Emphasis added]. While the ownership allegation that the property "belonged to" is not a model pleading, in light of the fact that Appellant did not object to the allegation as vague or indefinite, we find it sufficient to allege ownership in the State. See *Wells v. Ward*, 207 S.W.2d 698 (Tex.Civ.App.—Texarkana 1947, writ ref'd n.r.e.) (the words "belong to" are synonymous with or mean the same as "to be the property of" or "to have in possession", and connote ownership or title). Because the indictment contained all of the essential elements of the offense of theft, we find it facially complete. See *Flowers II*, 815 S.W.2d at 726–28.

■ Proceeding to the next step, we find that the ownership allegation contained in the indictment was not correctly incorporated into the charge since the application paragraph stated the name of the owner as George Autrey rather than the State of Texas.[9] However, we find that this did not lessen the State's burden of proof or broaden the basis upon which the State could obtain a conviction. Even though the charge required that the State prove that the owner of the property was George Autrey, the State was also required, as it had been under the original indictment, to prove that the property was in the custody of the State. Because a showing of custody or possession is suffi-cient to prove ownership, the same evidence which meets the allegations contained in the application paragraph of the charge is also sufficient to prove the offense as alleged in the original indictment. Consequently, the State's burden of proof was not lessened by the charge, nor did the charge broaden the basis upon which the State could obtain a conviction. See *Flowers II*, 815 S.W.2d at 729 (the amendment which changed ownership allegation did not charge a different offense or a different legal theory, but merely changed the evidence needed to prove the offense). In fact, the amendment required that the State prove more than under the original indictment in that it was required to prove ownership in George Autrey *and* that the property was in the custody of the State. Accordingly, we are not required by *Fisher* to exclude the ownership allegation found in the application paragraph from our sufficiency review.

■ In reviewing the sufficiency of the evidence to support a criminal conviction, we must review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Jones v. State*, 833 S.W.2d 118, 122 (Tex.Crim.App.1992). We do not resolve any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to do so. See *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim.App.1992); *Matson v. State*, 819 S.W.2d

7. "Person" means an individual, corporation, or association. Tex.Penal Code Ann. § 1.07(a)(38) (Vernon 1994) [formerly Section 1.07(a)(27) ]. "Association" means a government or governmental subdivision or agency, trust, partnership, or two or more persons having a joint or common economic interest. Tex.Penal Code Ann. § 1.07(a)(6) (Vernon 1994) [formerly Section 1.07(a)(5) ]. "Agency" includes authority, board, bureau, commission, committee, council, department, district, division, and office. Tex.Penal Code Ann. § 1.07(a)(3) (Vernon 1994). "Government" means the state; a county, municipality, or political subdivision of the state; or any branch or agency of the state, a county, municipality, or political subdivision. Tex.Penal Code Ann. § 1.07(a)(24)(A)(B)(C) (Vernon 1994) [formerly Section 1.07(a)(15) ].

8. "Possession" means actual care, custody, control, or management. Tex.Penal Code Ann. § 1.07(a)(39) (Vernon 1994) [formerly Section 1.07(a)(28) ].

9. Our sufficiency analysis under this point of error is limited to the ownership allegation since that is the only variance between the indictment and application paragraph specifically complained of by Appellant. However, in Point of Error No. Eight, we apply *Fisher* to our sufficiency review of the Section 31.03(b)(3) allegation.

839, 843 (Tex.Crim.App.1991). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843.

■ The evidence at trial showed that George Autrey worked for Texaco as a security representative. As part of that position with Texaco, he frequently cooperated with various Texas law enforcement agencies in investigating theft of equipment owned by Texaco. With regard to this case, Autrey assisted the Midland County Sheriff's Department and the Texas Rangers with a "sting" operation that was to be conducted in the Permian Basin. Autrey, on behalf of Texaco, loaned the law enforcement agencies conducting the investigation approximately 3000 feet of 2⅜ inch down hole oil well tubing owned by Texaco. The evidence showed that at the time of the commission of this offense, the property was in the possession of Special Texas Ranger, Dick Chenault, who was working undercover in the operation. At the time, Chenault was a peace officer commissioned by the Texas Department of Public Safety.

■ Viewing the evidence in the light most favorable to the verdict, we find that any rational trier of fact could have found that the State proved the allegations concerning ownership beyond a reasonable doubt. A corporation such as Texaco, cannot itself testify. See *Oggletree v. State*, 851 S.W.2d 367, 370 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Therefore, when a corporation is the owner of the property alleged to have been stolen, it is the preferable pleading practice to allege "special" ownership in a natural person acting for the corporation. *Compton v. State*, 607 S.W.2d 246, 250 (Tex.Crim.App.1980) (opinion on reh'g); *Oggletree*, 851 S.W.2d at 370. In this case, the evidence showed that Autrey was the special owner in that he was the person who acted on behalf of Texaco in loaning the pipe at issue to the State.

Even if we were to measure sufficiency of the evidence against the original indictment, we would still find the evidence sufficient. As stated before, a showing that the property was in the possession of the State of Texas at the time of the commission of this offense is a sufficient showing of ownership under former Section 1.07(a)(24). Ownership in the State was demonstrated by the evidence that Autrey loaned the property to the Texas Rangers and that Dick Chenault, a Special Texas Ranger, had the property in his possession at the time of the commission of the offense. Special Texas Rangers are commissioned by the Texas Rangers, which is a division of the Texas Department of Public Safety, which in turn is an agency of the State of Texas. See TEX.GOV'T CODE ANN. §§ 411.002(a), 411.021, 411.023 (Vernon 1990). A rational trier of fact could have found that the State owned the property under the facts presented. Appellant's contention with regard to sufficiency of the evidence is overruled.

### 2. *Due Process Violation*

■ Appellant cites *Ward v. State* for the proposition that he was deprived of due process and notice by being prosecuted under a document that was not a valid charging instrument. See *Ward*, 829 S.W.2d at 794. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Fisher*, 887 S.W.2d at 52–53. A conviction on a charge not made or not tried is a denial of due process consistent with the broader principle "that a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." *Fisher*, 887 S.W.2d at 53, citing *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979). While the indictment did not provide Appellant with notice from its face that the State would prove ownership in a "person" other than the State of Texas, Appellant does not allege,

and the record does not establish, that this lack of notice prejudiced his substantial rights or had an impact on his ability to prepare a defense. See *Adams v. State*, 707 S.W.2d 900, 902–03 (Tex.Crim.App.1986). Appellant's primary defense at trial was that he did not have knowledge that the pipe was stolen, which does not relate to the identity of the owner. As noted by the Court of Criminal Appeals in *Flowers II*, the change in the ownership element of the indictment did not involve a different theory of prosecution or charge an additional or different offense. *Flowers*, 815 S.W.2d at 729. The change simply altered the ownership allegation in a fact situation where the State had several choices of owners under TEX.PENAL CODE ANN. § 1.07(a)(24). *Id.* Because we cannot find any prejudice to Appellant's substantial rights cause by the asserted lack of notice, his contention with regard to a due process violation is overruled.

### 3. *Charge Error*

▮▮▮▮ Finally, Appellant contends that the trial court erred in submitting a jury charge which failed to comport with the indictment. Specifically, he contends that the ownership allegation varies from that stated in the indictment, but he does not complain of any other differences between the indictment and charge. If the error in the charge was the subject of a timely objection, then reversal is required upon a showing of some harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). When no proper objection is made at trial, error in the jury charge will mandate reversal only if it is so egregious and created such harm that the defendant did not have a fair and impartial trial. *Almanza*, 686 S.W.2d at 171. In making this determination, the court should examine the harm caused in the light of the entire jury charge, the state of the evidence, and any other relevant information in the record. *Almanza*, 686 S.W.2d at 171.

▮▮▮▮ Appellant admits that he failed to object to the charge on the ground that it did not track the original indictment. However,

pointing to the fact that the trial court overruled certain objections to the amendment of the indictment and granted him a running objection on those same grounds, Appellant argues that he preserved the alleged charge error. Because we find no harm in the asserted charge error, it is unnecessary for us to determine whether Appellant's objections preserved error.

In an effort to show harm, Appellant argues that the "jury's verdict" could not support a conviction under the original indictment because the application paragraph required the jury to find facts in variance with the indictment. Contrary to Appellant's assertion, we do not measure the "jury's verdict" against the charge or indictment to determine whether the evidence is sufficient. Rather, we measure the *evidence* against the indictment as properly incorporated into the charge to determine whether a rational trier of fact could have found that the State established the essential elements of the offense beyond a reasonable doubt. As already established, the evidence was sufficient to establish ownership in both George Autrey and the State of Texas. Thus, this is not a case in which the ineffective amendment permitted a conviction which could not have otherwise occurred had the jury been charged under the original indictment. Compare *Montoya*, 841 S.W.2d 419 (ineffective amendment and erroneous charge permitted jury to convict defendant even though State failed to prove complainant's name as alleged in indictment). Having found no harm, Appellant's contentions with regard to error in the jury charge are overruled. For all of these reasons, Point of Error No. Four is overruled.

## II. INSUFFICIENT EVIDENCE THAT THE EQUIPMENT WAS "DESIGNED FOR USE IN EXPLORATION OR FOR PRODUCTION OF NATURAL GAS OR CRUDE PETROLEUM OIL."

▮▮▮▮ In his sixth point of error, Appellant contends that the evidence was insufficient to support his conviction since the State did not establish that the stolen property was designed for use in exploration or for produc-

tion of natural gas or crude petroleum oil as alleged.[10] Appellant argues that many of the witnesses testified that the stolen pipe or upset tubing was not usable in any way for oil field purposes. But Charles Latch, a petroleum engineer and production manager for a petroleum company, testified in great detail how upset tubing was used for oilfield purposes.

In reviewing the sufficiency of the evidence to support a criminal conviction, this Court's role is not to resolve any conflict of fact or assign credibility to the witnesses, as it is the trier of fact's function to accept or reject any, part or all of any witness's testimony. See *Adelman,* 828 S.W.2d at 421; *Matson,* 819 S.W.2d at 843. Instead, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson,* 819 S.W.2d at 843. Regardless of the conflicting testimony of any other witness, Latch's testimony is such that a rational trier of fact could have found beyond a reasonable doubt that the property was designed for use in exploration or for production of natural gas or crude petroleum oil as alleged. We overrule Appellant's sixth point of error.

## III. INSUFFICIENT EVIDENCE THAT APPELLANT "BELIEVED" THE PROPERTY WAS STOLEN.

■ In his eighth point of error, Appellant contends that the evidence was insufficient to establish that he believed the property was stolen. This contention involves a portion of the Section 31.03(b)(3) definition of "appropriate". Appellant argues that the only evidence the State offered on this issue was the testimony of Texas Ranger Dick Chenault and an informant, Kelly Merron. Both witnesses testified that Chenault told Appellant that they had "ripped off" the pipe from Texaco. By contrast, Appellant testi-

fied that he did not believe the pipe to be stolen and that, to him, the term "ripped off" did not necessarily connote that something had been stolen. Appellant reasons that the evidence against him was circumstantial and that the circumstances did not exclude every reasonable hypothesis other than his guilt.[11]

■ First, we disagree with Appellant's contention that we are bound to review his point of error using the reasonable hypothesis construct. The allegation that Appellant appropriated the property believing it stolen by another is an allegation of *mens rea* or knowledge, which usually of necessity must be proven circumstantially. All other elements of the offense, were proven by direct evidence. When an accused admits doing the act but then denies any intent, the case is not made circumstantial because of such testimony. *Drager v. State,* 548 S.W.2d 890, 893 (Tex.Crim.App.1977); see also *Glover v. State,* 566 S.W.2d 636, 638 (Tex.Crim.App. 1978). Thus, we are not required to apply the reasonable hypothesis construct.

Second, applying *Fisher,* we find it appropriate to measure the evidence concerning this allegation against the charge given. By alleging that the property at issue was in the custody of a law enforcement agency and "expressly" represented as stolen by a law enforcement officer, the State alleged a portion of the Section 31.03(b)(3) definition of "appropriate" in the original indictment. In order to state the complete Section 31.03(b)(3) definition, the jury charge contained the additional phrase at issue in this sufficiency point, "and the Defendant did appropriate the property believing it was stolen by another". To the extent that the application paragraph contained the complete statutory definition, we do not find that the indictment was incorrectly incorporated into the

10. We have not applied *Fisher* to our analysis of this point of error since the allegation in question was contained in identical language in both the original indictment and the application paragraph.

11. When reviewing sufficiency of the evidence in circumstantial evidence cases tried prior to *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991),

an appellate court utilizes the "reasonable hypothesis theory," an analytical construct requiring that a conviction based on circumstantial evidence exclude every other reasonable hypothesis except the guilt of the accused. *Turro v. State,* 867 S.W.2d 43, 46–47 (Tex.Crim.App. 1993).

charge since this is an evidentiary matter which need not be pled in the indictment. See *Flowers II,* 815 S.W.2d at 727. Furthermore, *Fisher* instructs us that we may only disregard from our sufficiency review those matters contained in the instruction that would normally have to be pled in the indictment, but were not. *Fisher,* 887 S.W.2d at 57–58. Thus, the additional portion of Section 31.03(b)(3) need not be excluded from our review.

■■■ Turning our attention to the merits of Appellant's contention, it is well established that intent may be inferred from the actions, words, and conduct of the accused. *Robertson v. State,* 871 S.W.2d 701, 705 (Tex. Crim.App.1993); *McGee v. State,* 774 S.W.2d 229, 234 (Tex.Crim.App.1989), cert. denied, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990). This is a matter which must usually be proven circumstantially. The word "believing" is not defined in Section 31.03 or elsewhere in the Penal Code, and we have found no decision construing the meaning of the word in the context of Section 31.03(b)(3). When words in a statute or ordinance are not defined they are ordinarily given their plain meaning without construction of penal laws or laws on other subjects, unless the statute or ordinance clearly shows that they were used in some other sense. *Daniels v. State,* 754 S.W.2d 214, 219 (Tex. Crim.App.1988); TEX.GOV'T CODE ANN. § 311.011(a) (Vernon 1988). Webster defines "believe" as follows: "to accept as the truth; to take as true, real"; "to have confidence in a promise or statement of (another person)". *Webster's New Universal Unabridged Dictionary* 169 (1983). In discussing the meaning of the word "know" as used in Sections 22.011(b)(3) or (5) of the Penal Code, the First Court of Appeals discussed Section 31.03(b)(3) and held that the words "know" and "believe" were synonymous. See *Jiminez v. State,* 727 S.W.2d 789, 792–93 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (the word "know" is not limited to an actor's awareness of existing facts, but is broader and may include an actor's subjective belief in facts that do not exist or are not true).

The evidence at trial reflected that C.J. Havrda, a Texas Ranger, testified that he and other officers loaded ninety-two joints of 2⅜ inch upset tubing onto a truck-trailer driven by an informant, Kelly Merron. Merron and Special Texas Ranger Dick Chenault, who was working undercover in the operation, drove the pipe to Appellant's shop. After a short delay, Chenault and Merron met with Appellant and talked to him about purchasing the pipe. Chenault offered to sell the pipe for forty cents a foot. After inspecting the pipe, Appellant accepted Chenault's offer and gave him directions to his house so that the pipe could be offloaded there. Chenault then asked Appellant whether he ever sold equipment to Texaco because the pipe had been "ripped off" from Texaco and still had Texaco markings on it. Chenault and other witnesses testified that the phrase "ripped off" meant stolen. Appellant replied that he didn't do business with Texaco, and that he didn't want "to know nothing about that anyhow". Chenault said "Okay, I didn't say that then." Upon being told the pipe was "ripped off", Appellant told Chenault and Merron to offload the pipe at his business, rather than his home. After the pipe was offloaded, Appellant brought Chenault a check for the pipe and told him that he had left the payee's name blank so that Chenault could fill in whatever name he wanted. Appellant suggested that they cash the check at a local store, but Chenault told him that they could get it cashed in Midland. Appellant insisted that he go with Chenault and Merron to cash the check so that he could be sure that they got their money. They went to Western Foods with Appellant where he cashed the check and gave Chenault and Merron cash for the pipe.

Steve Ashby, a warehouse manager for Texaco, testified that in January of 1988, the market value of yellow band tubing was a little over $1 per foot. Charles Latch, production manager for Union Texas Petroleum, testified that the copus price of upset tubing like that involved in this case was $2.15 per foot at the time of Appellant's purchase. He explained that copus price was the price at

which his company would sell the upset tubing to its partners. He believed that, due to the strong demand for yellow band pipe at the time of Appellant's purchase, the market value was not less than $1.20 per foot under any circumstances. Thus, the market value of the pipe was 2 and ½ to 3 times as much as Appellant paid for it.

Given the facts that the property was represented to Appellant as being stolen, that Appellant indicated by his statements to Chenault that he understood that the pipe was stolen, and that he purchased it for a price well below market value, we find the evidence sufficient to show that Appellant appropriated the property believing it was stolen by another. Point of Error No. Eight is overruled.

## IV. SUPPRESSION OF FAVORABLE EVIDENCE.

In his eleventh point of error, Appellant, citing *Brady v. Maryland,* contends that the trial court erred in denying his motion for mistrial because the State suppressed and withheld favorable evidence, namely, tapes containing recorded conversations between Appellant and Ranger Chenault. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Appellant argues that "[a]pparently, the tape or tapes existed and were not provided," that they were "in all probability, material to [his] defense," and that their content "could have made a significant difference as well as a tactical difference." For these reasons, Appellant concludes that his due process rights were violated and his conviction should be reversed.

■ Under *Brady v. Maryland,* a prosecutor has an affirmative duty to turn over material, exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Evidence withheld by a prosecutor is "material" if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. *Id.* at 682, 105 S.Ct. at 3383. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.

Outside the presence of the jury, Chenault testified that he spoke to Appellant on the telephone on two occasions after the instant offense in an effort to sell Appellant more stolen property. Chenault denied under cross-examination that Appellant refused to purchase the stolen property. Instead, he said that Appellant, after initially agreeing to purchase the stolen property, later refused to buy it only because his buyer backed out upon learning that the items were stolen. Although the record is somewhat confusing, it appears that recordings of the conversations simply do not exist, apparently because the recording device fell off of the telephone. The record reflects that all audio and video tapes in the State's possession were played at a pretrial conference attended by counsel for both parties and the trial court.

The record does not support Appellant's unfounded assertions that the tapes existed or that they contained exculpatory evidence. Point of Error No. Eleven is overruled.

## V. COMMENT ON THE WEIGHT OF THE EVIDENCE.

In his twelfth point of error, Appellant contends that the trial court committed error by commenting on the weight of the evidence in the jury instructions. Directing our attention to the following jury instruction, he argues that the charge assumed that the property in question was upset tubing:

Before you would be warranted in convicting the Defendant, it must be established by the evidence beyond a reasonable doubt: (a) that George Autrey was the owner of the upset tubing in question; (b) that the Defendant, on or about the date in question, appropriated the upset tubing; (c) that prior to the appropriation of the upset tubing by the Defendant, the upset tubing was in the custody of a law enforcement agency and was explicitly represented by a law enforcement agent to the Defendant as being stolen and the Defendant appropriated the upset tubing believ-

ing it was stolen by another; (d) that the Defendant appropriated the upset tubing with the intent to deprive the owner of the upset tubing; (e) that the upset tubing was equipment designed for use in exploration for or production of natural gas or crude petroleum oil.

Although Appellant did not object to the charge on this ground, he argues that it was egregious error under the *Almanza* standard. See *Almanza*, 686 S.W.2d at 171.

■ A trial court should never give the jury an instruction that constitutes a comment on the elements of the alleged offense, or assumes a disputed fact. *Grady v. State*, 634 S.W.2d 316, 317 (Tex.Crim.App. 1982); *Koffel v. State*, 710 S.W.2d 796, 802 (Tex.App.—Fort Worth 1986, pet. ref'd); *Collins v. State*, 800 S.W.2d 267, 269 (Tex. App.—Houston (14th Dist.) 1990, no pet.). A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex.Crim.App. 1986); *Richardson v. State*, 766 S.W.2d 538, 541 (Tex.App.—Houston (14th Dist.) 1989, pet. ref'd). But in determining whether harm occurred, the Court of Criminal Appeals has held that the charge should be viewed as a whole and review should not be limited to a series of isolated statements or parts of the charge standing alone. See *Holley v. State*, 766 S.W.2d 254, 256 (Tex. Crim.App.1989); *Whaley*, 717 S.W.2d at 32; *Inman v. State*, 650 S.W.2d 417, 419 (Tex. Crim.App.1983); *Jackson v. State*, 591 S.W.2d 820, 824–825 (Tex.Crim.App.1979).

■ The application paragraph in the present cause made it eminently clear to the jury that the State had the burden of proof to show that Appellant appropriated upset tubing. The application paragraph required that the jury find that "DEARL FLOWERS, did intentionally or knowingly unlawfully appropriate property, namely, ninety-two (92) joints of two and three eighths (2⅜) inch upset tubing ..." as charged in the indictment. Viewed in its entirety, the charge does not assume that the property in ques-

tion was upset tubing. We overrule Point of Error No. Twelve.

## VI. REFERENCE TO PAROLE IN JURY CHARGE.

■ In his thirteenth and fourteenth points of error, Appellant contends that the trial court erred by referring to the existence of parole in its jury charge. He refers to the following instruction:

> In determining the punishment in this case you are instructed that you are not to discuss among yourselves how long the Defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas.

Appellant argues that this charge impermissibly informed the jury that parole exists without prohibiting their individual consideration of parole in arriving at a sentence.

The charge in question contains no parole instruction other than that quoted above, thus it is not the type of article 37.07, section 4(a) parole instruction declared unconstitutional in *Rose v. State*, 752 S.W.2d 529, 553 (Tex.Crim.App.1987) (opinion on reh'g). The complained-of instruction is more akin to a curative instruction which discourages jurors from imposing a greater sentence than they otherwise might. See *Grigsby v. State*, 833 S.W.2d 573, 576–77 (Tex.App.—Dallas 1992, pet. ref'd). Texas courts have regarded similar instructions as curative and have viewed such instructions as a mitigating factor when determining whether the giving of parole law instructions harmed an appellant. See *Arnold v. State*, 786 S.W.2d 295, 311 (Tex.Crim. App.1990); *Rose*, 752 S.W.2d at 554; *Roberts v. State*, 849 S.W.2d 407, 410 (Tex.App.— Fort Worth 1993, pet. ref'd); *Grigsby*, 833 S.W.2d at 576. Rather than suffering harm, it is more likely that Flowers benefitted from the instruction. We overrule Points of Error Nos. Thirteen and Fourteen.

Having overruled Points of Error Four, Six, Eight, Eleven, Twelve, Thirteen, and

Fourteen, we affirm the judgment of conviction.