**Miguel MONTOYA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–90–01515–CR.**

Court of Appeals of Texas, Dallas.

Aug. 26, 1992.

Rehearing Denied Oct. 16, 1992.

Discretionary Review Refused Jan. 27, 1993.

Gary A. Udashen, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before BAKER, OVARD and BURNETT, JJ.

## OPINION ON REHEARING

BURNETT, Justice.

We withdraw our opinion of March 30, 1992, and vacate the judgment of March 30, 1992. The following are now the court's opinion and judgment.

Miguel Montoya appeals his jury conviction for the aggravated sexual assault of Lora Brooks, a child younger than fourteen years old. The jury assessed punishment at ninety-nine years' confinement in the state penitentiary. Montoya brings fourteen points of error on appeal. In two points of error, he contends that the evidence is insufficient because of fatal variances between the indictment and the proof at trial. In the remaining twelve points of error, he contends that the trial court erred

because (1) it did not effectively amend the indictment to allege the proper complainant, (2) it allowed testimony of Lora's outcry statement, (3) it overruled his motion for new trial based on the State's presentation of extraneous offense evidence, (4) it overruled his objection to the mother's testimony and (5) the State's final argument about the extraneous offense, (6) it overruled his hearsay and bolstering objections to a police detective's testimony about what Lora told him, and (7) it did not limit the definition of knowingly and intentionally to the result of the acts in the jury charge. We sustain Montoya's second point of error contending that the trial court did not effectively amend the indictment to allege the proper complainant. We reverse the trial court's judgment and remand this cause for a new trial.

## FACTS

Montoya and nine-year-old Lora Brooks lived in the same apartment complex. Lora's mother testified that Lora had a brother that was about the same age as Montoya's baby. Lora would take her younger brother to Montoya's apartment so the two babies could play together. Montoya asked Lora to babysit one Saturday afternoon. When Lora went to Montoya's apartment, Montoya was alone. Montoya and Lora watched a movie for a little while. Montoya asked Lora if she wanted to make $10. She said, "no." He took her back to his bedroom and told her to lay down on the bed. She laid down on her back. He got on the bed and kneeled over her. He pulled her panties down. She testified that "he licked my stuff with his tongue." She pointed to her vaginal area when asked by the prosecutor to show the jury what she meant by "her stuff." She testified that he then put "his stuff" in hers, and told the jury that "his stuff" is where a boy goes to the bathroom.

Montoya told Lora that he had done the same thing to another girl in the apartment complex named Amber. He warned her not to tell anybody, and if she did, then not to ever come back to his apartment. She testified first that Montoya had not given her the money when they went to the bed-

room, but then testified that Montoya gave her $10 before he did these things. When she went home, her mother asked where she got the $10. She told her mother that a lady gave it to her for taking out the trash. Later that day, Lora complained to her mother about vaginal burning. After her mother told Lora that she was going to take her to the doctor, Lora told her mother what had happened with Montoya.

On Sunday morning, Lora's mother took her to the county hospital. Dr. Mayberry examined Lora and made a report. Dr. George Wendel testified about Dr. Mayberry's report. Both doctors belong to the medical group that examines women, regardless of their age, who come to the hospital complaining of sexual assault. The examination revealed a small bleeding split in the skin around the opening to Lora's vagina. Dr. Wendel testified that this injury is typical in young girls that have been sexually assaulted. The examination revealed that nothing actually penetrated Lora's vagina.

Bob Alexander, a Dallas Police Department detective, investigated the assault on the Sunday that Lora went to the hospital. He talked with Lora on the following Tuesday evening. She described the assault to him. His testimony corroborated Lora's testimony and her outcry statement to her mother.

## SUFFICIENCY OF THE EVIDENCE

■ In two points of error, Montoya asserts that the evidence is insufficient because of two fatal variances between the indictment and the proof at trial. When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). This standard supports the jury's responsibility, as the trier of fact, to resolve conflicts in the testimony, to weigh the evidence, and to draw reason-

able inferences from basic facts to ultimate facts. *See Robinson v. State*, 764 S.W.2d 367, 372–73 (Tex.App.—Dallas 1989, pet. ref'd).

### Variance In Proof Of Elements

In his first point of error, Montoya contends that the evidence is insufficient because of a fatal variance between the indictment and the proof at trial about an element of the offense. The indictment alleged that Montoya used his mouth in the offense. Lora testified that Montoya licked her with his tongue. He argues that tongue and mouth are not the same thing, so the evidence at trial did not prove the offense as alleged. The State responds that there is no variance because the tongue is part of the mouth.

The jury found Montoya guilty of aggravated sexual assault under the second paragraph of the indictment, in which the State had indicted Montoya under Texas Penal Code section 22.021(a)(1)(B)(iii). Under this section, a person commits sexual assault if that person intentionally or knowingly causes the sexual organ of another person younger than fourteen years old, to contact or penetrate the mouth of another person, including the actor. TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(iii) (Vernon 1989). We must construe a statute to carry out the legislature's intent. *Patterson v. State* 769 S.W.2d 938, 940 (Tex.Crim.App.1989). Statutory terms that are not defined in the statute are given their ordinary everyday meaning. *Rivas v. State*, 787 S.W.2d 113, 115 (Tex.App.—Dallas 1990, no pet.); TEX.GOV'T CODE ANN. § 311.011(a) (Vernon Supp.1992).

The statute does not define mouth and we have not found any case law defining mouth as used in the statute. Both parties cite us to versions of Webster's Dictionary. A "mouth" is "the cavity bounded externally by the lips and internally by the pharynx that encloses in the typical vertebrate the tongue, gums, and teeth." WEBSTER'S NEW COLLEGIATE DICTIONARY (9th ed. 1985). If we limit mouth to the *cavity* containing the tongue, gum, and teeth, then we defeat the intent of the statute because a cavity cannot make contact with another object or person as required under the statute. Common sense and common usage leads us to conclude that the legislature intended the word "mouth" to include its parts, such as the teeth and tongue.

Lora testified that Montoya licked "her stuff" with his tongue. Her mother testified that Lora told her that Montoya put his mouth between her legs and in her stuff. The testimony of a sexual assault victim alone is sufficient evidence, even if it is a child using unsophisticated language to describe the act. *See Jordan–Maier v. State*, 792 S.W.2d 188, 190 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). There is no fatal variance between the indictment and the proof at trial. The evidence sufficiently established the assault as alleged in the indictment. We overrule Montoya's first point of error.

### Variance In Proof Of Name

In his third point of error, Montoya contends that the evidence is insufficient because of a fatal variance between the victim's name in the indictment and her name proven at trial. The grand jury indicted Montoya for sexually assaulting "Lisa Brooks." The State presented evidence that Montoya assaulted Lora Brooks. The jury charge asked the jury to decide whether Montoya assaulted Lora Brooks.

In a jury trial, we review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment *as incorporated in the jury charge*. *Garrett v. State*, 749 S.W.2d 784, 788 (Tex.Crim.App.1986). The indictment is directed to the defendant and the charge is directed to the jury. *Benson v. State*, 661 S.W.2d 708, 713 (Tex.Crim.App.1982). It is the charge that authorizes conviction. *See Jones v. State*, 815 S.W.2d 667, 669–70 (Tex.Crim.App.1991). In reviewing whether the evidence is sufficient to support a jury verdict, we focus on whether a jury, acting rationally, could have found the evidence sufficient to establish the elements of the offense beyond a

reasonable doubt. *See Blankenship v. State,* 780 S.W.2d 198, 207 (Tex.Crim.App. 1989) (op. on reh'g).

■ The jury charge asked the jury to decide whether Montoya assaulted Lora Brooks. The evidence before the jury showed that Montoya assaulted Lora Brooks. The jury acted rationally when it decided beyond a reasonable doubt that Montoya assaulted Lora Brooks. The evidence sufficiently supports the jury's verdict. We overrule Montoya's third point of error.

## AMENDMENT TO THE INDICTMENT

■ In his second point of error, Montoya contends that the trial court's order amending the indictment was ineffective to change the name of the complainant on the indictment from Lisa to Lora. The State filed a motion to amend the indictment from "Lisa" to "Lora." Montoya did not object to the amendment. The court entered an order changing the name, but did not physically alter the face of the indictment.

■ Montoya correctly contends that the trial court did not effectively amend the indictment. The court must physically alter the face of the indictment to effectively amend an indictment. *Ward v. State,* 829 S.W.2d 787, 793 (Tex.Crim.App.1992); TEX. CODE CRIM.PROC.ANN. art. 28.10 (Vernon 1989). The mere granting of a motion to amend is not an actual amendment but rather an appropriate vehicle by which to initiate the amending process. *Ward,* 829 S.W.2d at 793. The Court of Criminal Appeals has sent a clear message to the State that an indictment must name the proper complainant. The Court of Criminal Appeals will not allow the State to maintain a conviction where it has not matched its proof to the indictment under which it charged the defendant. *See Ward,* 829 S.W.2d at 793.

■ Because the trial court did not effectively amend the indictment, the State presented evidence consistent with the jury charge but in conflict with the indictment. However, this does not require us to re- verse the trial court and enter a judgment of acquittal. *Ward,* unlike this case, involved a bench trial. *Id.* at 788. In a bench trial, the evidence can only be measured against the indictment because there is no jury charge and verdict. *Id.* at 795. The discrepancy between the indictment and the evidence renders the evidence insufficient and the appellate court must reverse and enter a judgment of acquittal. *See Ward,* 829 S.W.2d at 795. However, in a jury trial, it is the charge that authorizes the conviction. *See Jones,* 815 S.W.2d at 669. The charge should correspond with and incorporate the allegations in the indictment. *Benson,* 661 S.W.2d at 713; *see also Garrett,* 749 S.W.2d at 788. The trial court's failure to physically alter the indictment in a jury trial constitutes trial error, but does not necessarily make the evidence insufficient to support the conviction.

■ Generally, trial error is subject to a harm analysis where the State has the burden of showing beyond a reasonable doubt that the defendant was not harmed. *See* TEX.R.APP.P. 81(b)(2); *cf. Adams v. State,* 707 S.W.2d 900, 903 (Tex.Crim.App. 1986) (prior to current rules, the defendant had burden to show that amendment prejudiced his substantial rights). However, as with other violations of article 28.10, a harm analysis serves no purpose when the trial court's failure to amend the indictment causes the charge to differ from indictment. *See Beebe v. State,* 811 S.W.2d 604, 606 (Tex.Crim.App.1991) (provision in article 28.10(a) giving defendant ten days to prepare for trial after the State amends an indictment is not subject to a harm analysis); *but see also Hillin v. State,* 808 S.W.2d 486, 491 (Tex.Crim.App.1991) (concurring opinion) (harm analysis would apply to violations of 28.10(a) other than denial of ten day period). If the complainant's name in the indictment and the charge had corresponded, then the jury could not have found Montoya guilty based on the evidence at trial. The discrepancy between the indictment and the charge allowed the jury to convict Montoya. The result would be the same in any jury trial where the jury returns a guilty verdict on a charge that

reflects the evidence at trial but does not correspond to the indictment.

We hold that, in the case of a jury trial where the trial court has not physically altered the indictment to allege the correct complainant, the trial court commits reversible error that entitles the defendant to a new trial. *Cf. Ward,* 829 S.W.2d at 795. We sustain Montoya's third point of error. We reverse the trial court's judgment and remand this cause for a new trial. Because we remand this cause for a new trial, we do not address Montoya's remaining points of error.