Becker v. State








COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MARK RAY SMITH,                                         )                  No. 08-03-00384-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  385th District Court
)
THE STATE OF TEXAS,                                   )                  of Midland County, Texas
)
                                    Appellee.                          )                  (TC# CR28264)

O P I N I O N

            Mark Ray Smith appeals his conviction of three counts of aggravated sexual assault of a
child. A jury found Appellant guilty and assessed his punishment at imprisonment for twenty-five
years on each count. The trial court determined that the sentences in Counts I, II, and III would run
consecutively. We affirm.
FACTUAL SUMMARY
            Jennifer George and her daughters from a prior marriage, five-year-old E.G. and two-year-old
H.G., began living with George’s boyfriend, Appellant, in October 1999. In the summer of 2002,
the unemployed couple considered moving to Tennessee, but decided instead to live with George’s
mother, Patty Edens, in Midland. Edens paid the expenses for a few months, but in October, she
demanded that Appellant get a job or move out. Appellant did not get a job and moved out that same
month. In December 2002, E.G. complained to Edens that her “tee-tee” hurt, and Edens asked
whether anyone had been bothering her. E.G. said that Appellant had been “bothering” her on her
“tee-tee.” When pressed for details, E.G. told Edens that Appellant had showered with her and had
touched her private parts. Appellant had also gotten in the bed with her and rubbed her “tee-tee”
with his private parts. Appellant “hit” E.G.’s “tee-tee” with his private parts and it hurt. E.G. saw
Appellant “pee white stuff” into a wash cloth and he made her shower afterwards. E.G. told George
what Appellant had been doing to her, but George did nothing about it. Edens called Child
Protective Services and the Midland Police Department the following morning. She took the child
to the Child Advocacy Center where she was interviewed by Jo Ann Sarabia on December 16, 2002. 
E.G. was also seen by a sexual assault examiner at Midland Memorial Hospital. 
            Jo Ann Sarabia is a forensic interviewer employed by the Midland Rape Crisis and Children’s
Advocacy Center. Sarabia is trained to interview children in a non-leading manner. E.G. told
Sarabia during the interview that Appellant had touched her “private”


 and had rubbed it with his
hand. Appellant also licked her “private” with his tongue. Appellant threatened to beat E.G. with
a ping pong paddle if she told anyone. 
            Donna Doyle is a charge nurse at Midland Memorial Hospital. She is also a certified sexual
assault nurse examiner. On December 26, 2002, Doyle performed a sexual assault examination of
E.G. at the hospital. A sexual assault examination consists of three parts: (1) taking a medical
history from the patient; (2) a head-to-toe examination of the patient; and (3) a detailed genital
examination. E.G. reported to Doyle that Appellant began touching her when she was six years old. 
He showered with her and touched the “front” and “back” of her “private part” with his hand. 
Appellant would also touch her private part in bed. Doyle did not observe any injuries to E.G.’s
body surfaces in the head-to toe examination. 
            Doyle described for the jury the process of performing the genital exam. To conduct the
detailed genital examination, Doyle utilizes a colposcope, which is a camera mounted on a
microscope. The colposcope permits Doyle to magnify the tissues she is observing by 7.5, 15, and
30 times what the naked eye can see and to take pictures of what she observes during the exam. To
assist the jury, Doyle also drew the anatomy she would observe in a female patient, including the
hymen. The hymen is a collar of tissue on the outside of the vagina. Doyle explained to the jury
that, contrary to the “old wives’ tale,” the hymen does not actually cover the vagina. In infancy, the
hymen may be white and fluffy because the infant was exposed to estrogen in her mother’s womb,
but by age three, the hymen no longer has this appearance. Doyle explained, through the use of an
illustration from the Texas Evidence Collection Manual (State’s Exhibit 18), the appearance of the
five common, normal hymenal variations in prepubertal girls: punctate, annular, denticular, crescent,
and cuff-like. If something penetrates the hymen, the hymen can tear which will cause a notch or
scar to form. Penetration of the hymen can also cause it to be worn away and thinned. 
            Doyle did not observe any trauma to the exterior genitalia during her examination, but she
did observe changes to E.G.’s hymen. Using photographs taken during the sexual assault
examination with the aid of the colposcope, Doyle showed the jury that E.G. has what is described
in State’s Exhibit 18 as a crescent hymen. Doyle expected to find that the edge of the hymen
appeared the same all of the way around, but she instead observed a thinning of the hymen from 1
o’clock to 4 o’clock and a pronounced thinning from 8 o’clock to 11 o’clock. This thinning
indicated to Doyle that penetration had occurred on more than one occasion. Doyle additionally
found a notch on the anus indicating that it also had been penetrated. In Doyle’s opinion, a sexual
assault had occurred. 
            E.G. testified that Appellant touched her private with his private, his hand, and his tongue. 
The prosecutor presented to E.G. a drawing of a naked girl, State’s Exhibit 10, and asked her to
circle the areas she refers to as her private and her bottom. The areas circled by E.G. depicts the
female genitalia and the anus. She also viewed a drawing of a naked boy and when asked to indicate
what she meant by his private, drew a circle around the penis. E.G. described in detail for the jury
how Appellant assaulted her in the shower by rubbing her private with his. He showered with her
“almost every day.” Appellant also forced E.G. to get on the bed where he put a wash cloth beneath
her bottom. He rubbed lotion on her private and then put his private in hers and went up and down. 
He would ask her to flip over and he would do it again. A “white goo” came out of Appellant’s
private onto E.G.’s private and onto the wash cloth. After Appellant was finished, he would wash
off the wash cloth and wipe E.G.’s private part. On some occasions, Appellant also licked E.G.’s
private with his tongue. Appellant threatened to kill E.G. if she told anyone. She was also afraid
that he would beat her with a paddle, his hand, or his belt. 
            The indictment alleged that Appellant intentionally and knowingly:
•          penetrated E.G.’s sexual organ with his sexual organ (Count I); 
•          penetrated E.G.’s sexual organ with his finger (Count II) and
•          caused E.G.’s sexual organ to contact his mouth (Count III). 
            The jury found Appellant guilty of each count and assessed punishment at imprisonment for
a term of twenty-five years on each count. The trial court determined that the sentences in Counts
I, II, and III would run consecutively. Appellant filed a notice of appeal in the instant case and in
the revocation proceeding heard by the trial court in conjunction with the trial.



CRUEL AND UNUSUAL PUNISHMENT
            In Point of Error One, Appellant asserts that his cumulated sentences constitute cruel and
unusual punishment under both the Eighth Amendment to the United States Constitution and Article
I, section 13 of the Texas Constitution because his punishment is grossly disproportionate to the
crimes for which he was convicted. A timely objection or motion stating the specific grounds for
the ruling desired is required to preserve a complaint for appellate review. Tex.R.App.P. 33.1(a). 
Constitutional rights, including the right to be free from cruel and unusual punishment, may be
waived by failure to assert the right by a timely objection or motion. Rhoades v. State, 934 S.W.2d
113, 120 (Tex.Crim.App. 1996); Castaneda v. State, 135 S.W.3d 719, 723 (Tex.App.--Dallas 2003,
no pet.); Rodriguez v. State, 71 S.W.3d 778, 779 (Tex.App.--Texarkana 2002, no pet.). Several
intermediate appellate courts have specifically held in published decisions that a disproportionate
sentence complaint is a matter which must be preserved by a timely objection or motion raised in
the trial court. See Buster v. State, 144 S.W.3d 71, 81 (Tex.App.--Tyler 2004, no pet.); Hookie v.
State, 136 S.W.3d 671, 679-80 (Tex.App.--Texarkana 2004, no pet.); Castaneda v. State, 135
S.W.3d 719, 723 (Tex.App.--Dallas 2003, no pet.); Rodriguez v. State, 71 S.W.3d 778, 779
(Tex.App.--Texarkana 2002, no pet.); Jackson v. State, 989 S.W.2d 842, 845 (Tex.App.--Texarkana
1999, no pet.). We agree that a disproportionate sentence issue is subject to procedural default. 
When the State made an oral motion for the three sentences to be stacked, Appellant’s counsel made
a well-reasoned argument that the cases should be run concurrently but he did not object that
stacking the sentences would constitute cruel and unusual punishment. Because Appellant did not
object on Eighth Amendment grounds when the trial court ordered that the sentences be served
consecutively, we must conclude that the issue is not preserved for our review. See Rhoades, 934
S.W.2d at 120. Point of Error One is overruled.
HEARSAY
            In Point of Error Two, Appellant contends that the trial court abused its discretion by
overruling his hearsay exception and admitting Nurse Doyle’s testimony regarding E.G.’s statements
to her. He alleges that the hearsay exception does not apply because the State did not establish that
E.G. was aware that the statements would be used for medical diagnosis or treatment or that she
understood the importance of being truthful in her statements made to Doyle.
            Rule 803(4) of the Texas Rules of Evidence is an exception to the hearsay rule for statements
“made for purposes of medical diagnosis or treatment and describing medical history, or past or
present symptoms, pain, or sensations, or the inception or general character of the cause or external
source thereof insofar as reasonably pertinent to diagnosis or treatment.” Tex.R.Evid. 803(4). This
exception is based on the assumption that the patient understands the importance of being truthful
with the medical personnel involved to receive an accurate diagnosis and treatment. Powell v. State,
88 S.W.3d 794 (Tex.App.--El Paso 2002, no pet.); Beheler v. State, 3 S.W.3d 182, 188 (Tex.App.--Fort Worth 1999, pet. ref’d); Fleming v. State, 819 S.W.2d 237, 247 (Tex.App.--Austin 1991, pet.
ref’d). Where very young children are responsible for relating information to their healthcare
provider, the presumption of reliability that forms the basis for this exception may break down if they
do not understand the importance of being truthful. Beheler, 3 S.W.3d at 188; Fleming, 819 S.W.2d
at 247. Nevertheless, there is no requirement that a witness expressly state that the hearsay declarant
recognized the need to be truthful in her statements for the medical treatment exception to apply. 
Beheler, 3 S.W.3d at 188. Instead, the reviewing court must look to the record to see if it supports
a conclusion that the child understood why she needed to be honest when speaking to the caregiver. 
Beheler, 3 S.W.3d at 188-89; see Molina v. State, 971 S.W.2d 676, 684 (Tex.App.--Houston [14 th
Dist.] 1998, pet. ref’d); Fleming, 819 S.W.2d at 247. Likewise, it is unnecessary for the witness to
use the magic words “diagnosis” or “treatment.” Beheler, 3 S.W.3d at 189. It is sufficient that the
evidence reflects that the statements were made for the purpose of medical diagnosis and treatment. 
Beheler, 3 S.W.3d at 189.
            Doyle testified that she obtains a medical history from the patient because it provides a guide
for what she needs to look for during the examination. Thus, the record supports a conclusion by
the trial court that E.G.’s statements regarding the sexual abuse were made for the purpose of
medical diagnosis and treatment. 
            We next consider whether the trial court abused its discretion by concluding that E.G.
understood the necessity for being truthful. In Beheler, the sexual assault nurse examiner did not
specifically inquire whether the child understood the importance of being truthful in her statements. 
See Beheler, 3 S.W.3d at 189. However, the child told the nurse that she knew why she was there. 
Id. The Fort Worth Court of Appeals found that this evidence supported a finding that the child
understood the need to tell the truth. Id. The instant case is indistinguishable. While there is no
evidence that Doyle specifically inquired whether E.G. understood the need to be truthful, she asked
E.G. if she understood why she was at the hospital. E.G. related that it was because Appellant had
touched her. Without any prompting by Doyle or leading questions, E.G. went on to provide details
regarding the sexual abuse, such as the nature of the abuse and over what period of time it took
place. Finding no abuse of discretion in the admission of this evidence, we overrule Point of Error
Two. 
EXPERT TESTIMONY
            In Point of Error Three, Appellant alleges that the trial court abused its discretion by
permitting Nurse Doyle to state her expert opinion that a sexual assault had occurred. Appellant’s
argument contains three parts: (1) Doyle’s expert opinion is not based on a body of scientific or
specialized knowledge; (2) assuming such a body of knowledge exists, Doyle is not qualified to state
an expert opinion that a sexual assault had occurred; and (3) Doyle’s expert opinion invaded the
province of the jury by stating a legal conclusion that a sexual assault had occurred.
            Prior to trial, the State designated Doyle as an expert witness. At Appellant’s request during
trial, the court conducted a Daubert-Kelly


 hearing to determine Doyle’s qualifications and the
reliability of her opinion. Doyle is a registered nurse certified in pediatric nursing and is employed
on a full-time basis at Midland Memorial Hospital. She is also a sexual assault nurse examiner (or
SANE nurse), and she performs these examinations on a contract basis for Midland Rape Crisis. A
sexual assault nurse examiner is a registered nurse who is specially trained to provide comprehensive
care to the sexual assault patient and perform a detailed head-to-toe and genital exam looking for
trauma. Doyle’s profession as a SANE nurse is based on a body of learning or knowledge which has
been developed through observation and experience in the subject matter. There are articles, books,
and literature in this specialized field of learning by which a person can acquire specialized
knowledge of the field. Doyle had with her during the hearing the manuals on which her training
is based and which she utilizes in her practice as a sexual assault nurse examiner. The principles of
this body of learning or specialized knowledge are generally accepted as valid by members of
Doyle’s profession and the medical profession and can be applied to determine issues or questions
related to the field. 
            In Texas, sexual assault nurse examiners are certified through the office of the Texas
Attorney General. Doyle obtained her training through the Attorney General’s Office. In order to
be certified as a sexual assault nurse examiner, a nurse must first be a registered nurse. Doyle was
required to attend fifty-six hours of classroom training, twenty-four hours of adult female genital
speculum exams in an OB/GYN office, and twenty hours of well-child checkups in a pediatrician’s
office. Following that, Doyle underwent sixteen hours of courtroom observation. She was next
required to perform six adult sexual assault exams with a preceptor and ten pediatric exams with a
preceptor. Since her certification as a pediatric and adult sexual assault nurse examiner, Doyle had
performed 115 sexual assault examinations (46 adult and 69 pediatric). In conducting these exams,
she used and applied the principles and knowledge of her field of expertise. As a result of her
training as a sexual assault nurse and based on the sexual assault exam, Doyle is able to determine
whether an allegation of abuse is consistent with the physical findings. Further, she is able to
examine the female genitalia, including the hymen, and determine whether penetration has occurred
based on changes in the appearance of the hymen. In response to questioning by Appellant, Doyle
testified that she is trained to recognize a “normal” hymen and that publications accepted by her
profession depict the appearance of a normal hymen. 
            At the conclusion of the hearing, Appellant objected that Doyle’s opinion was not sufficiently
reliable because the State had not shown that a valid and relevant theory exists in the scientific
community or that a body of knowledge exists regarding what constitutes a “normal” hymen. The
trial court overruled the objections and permitted Doyle to testify as an expert. Doyle then testified
before the jury describing not only her qualifications but also her examination of E.G. and her
findings. Her testimony included the presentation of an illustration depicting common, normal
hymenal variations in prepubertal girls. Based on her observations and examination of E.G.’s hymen
and anus, Doyle stated her opinion that penetration had occurred. The following exchange then took
place between the prosecutor and Nurse Doyle:
[Prosecutor]: Did you reach an opinion, after looking at [E.G.’s] sexual organs?
[Doyle]: Yes.
[Prosecutor]: Okay. And what was your opinion?
[Defense counsel]: And we respectfully object under Texas Rules of Evidence 702,
704 and 705. Again it invades the province of the jury. We respectfully object. No
proper predicate has been laid under our Rules of Evidence, your Honor.
 
[The Court]: Overrule the objection.
[Prosecutor]: What was your opinion?
[Doyle]: Yes -- I’m sorry. What was the question?
[Prosecutor]: What was your opinion?
[Doyle]: It was that a sexual assault had occurred. May I add, in The State of Texas,
any injury inside the labia majora is considered sexual assault.
 
[Prosecutor]: Okay. Is any penetration inside the labia majora considered
penetration?
 
[Doyle]: Yes.
 

Applicable Law and
the Standard of Review

            In a case where the expert opinion is based on a scientific theory, and the scientific theory
or technique has not been determined to be reliable, the admission of that novel scientific evidence
is governed by Texas Rule of Criminal Evidence 702 and the test stated in Kelly v. State, 824 S.W.2d
568, 573 (Tex.Crim.App. 1992). See Emerson v. State, 880 S.W.2d 759, 763 (Tex.Crim.App. 1994). 
Rule 702 provides that if scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or
otherwise. Tex.R.Evid. 702. The special knowledge which qualifies a witness to give an expert
opinion may be derived from specialized education, practical experience, a study of technical works,
or a varying combination of these things. Wyatt v. State, 23 S.W.3d 18, 27 (Tex.Crim.App. 2000);
Penry v. State, 903 S.W.2d 715, 762 (Tex.Crim.App. 1995). The proponent of scientific or technical
evidence has the burden of demonstrating by clear and convincing evidence that the evidence is both
reliable and relevant. Kelly, 824 S.W.2d at 573. The question of whether a witness offered as an
expert possesses the required qualifications rests largely in the trial court’s discretion. Wyatt, 23
S.W.3d at 27. Absent a clear abuse of that discretion, the trial court’s decision to admit or exclude
expert testimony will not be disturbed. Id.
            The threshold determination in an inquiry into the admissibility of expert testimony under
Rule 702 is whether such testimony is helpful to the trier of fact. Emerson, 880 S.W.2d at 765. For
such testimony to be helpful, the basis of the testimony must be reliable. Id., citing Kelly, 824
S.W.2d at 572. Three criteria must be satisfied for scientific evidence to be considered reliable: (1)
the underlying theory must be valid; (2) the technique applying the theory must be valid; and (3) the
technique must be properly applied on the occasion in question. Kelly, 824 S.W.2d at 573. In
making the reliability determination, courts may consider the following non-exclusive list of factors:
(1) the extent to which the underlying scientific theory and technique are accepted as valid by the
relevant scientific community if such a community can be ascertained; (2) the qualifications of the
testifying expert; (3) the existence of literature supporting or rejecting the underlying scientific
theory and technique; (4) the potential rate of error of the technique; (5) the availability of other
experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory
and technique can be explained to the court; and (7) the experience and skill of the person who
applied the technique on the occasion in question. Id.
            Doyle’s testimony established that it is accepted by the medical community that a pre-pubertal girl’s hymen will have what is considered a normal appearance and that penetration of the
hymen causes distinct changes to the appearance of the hymen which can be observed. The medical
community also accepts the technique employed by Doyle to examine the hymen. Doyle described
literature which supports this theory and the technique employed by Doyle in this case. The evidence
also showed that Doyle possesses considerable experience and skill in performing sexual assault
examinations and she properly performed the examination in this case. Thus, the State established
that Doyle’s expert opinion regarding the occurrence of penetration based on the appearance of the
hymen is reliable. Cf. Gregory v. State, 56 S.W.3d 164, 179 (Tex.App.--Houston [14th Dist.] 2001,
pet. dism’d)(holding nurse was qualified to testify as expert: nurse had completed one-year course
dedicated to sexual assault cases, studied medical literature on genital findings in sexually abused
children, performed sexual assault examinations for more than four years, and completed over 650
examinations, approximately 80 percent of which were performed on children under age twelve;
nurse outlined procedures she performs during examination of suspected sexual assault victim,
explaining in detail discrete steps in process, including taking brief history from patient for diagnosis
and treatment, conducting complete physical examination, performing detailed genital examination
with child in lithotomy position, and conducting examination of hymenal rim using colposcope,
which magnifies tissues and enables examiner to see abrasions, tears, or abnormalities). That,
however, is not the focus of Appellant’s complaint on appeal. Appellant instead argues that Doyle
exceeded her expertise and invaded the province of the jury by offering an expert opinion on the
ultimate issue to be decided by the jury, namely, whether a sexual assault had occurred.
            As acknowledged by Appellant, Rule 704 provides that testimony in the form of an opinion
or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be
decided by the trier of fact. Tex.R.Evid. 704. Thus, Doyle’s testimony that a sexual assault
occurred is not inadmissible simply because it embraces an ultimate issue to be decided by the jury. 
The State, however, did not establish in the hearing held outside of the jury’s presence that Doyle’s
specialized learning or knowledge included an understanding of the elements of sexual assault such
that she would be qualified to render such an opinion. Consequently, the opinion is not “otherwise
admissible” as required by Rule 704. The trial court abused its discretion in admitting this portion
of Doyle’s testimony over Appellant’s objection.
Harm Analysis
            The erroneous admission of expert testimony is non-constitutional error. Accordingly, we
apply the harm analysis standard found in Tex.R.App.P. 44.2(b). See Sexton v. State, 93 S.W.3d 96,
101 (Tex.Crim.App. 2002). Under this standard, the error must be disregarded unless Appellant’s
substantial rights are affected. Tex.R.App.P. 44.2(b). Substantial rights are not affected by the
erroneous admission of evidence if the appellate court, after examining the record as a whole, has
fair assurance that the error did not influence the jury, or had but a slight effect. Motilla v. State, 78
S.W.3d 352, 355 (Tex.Crim.App. 2002); Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App.
1998). In assessing the likelihood that the jury’s decision was adversely affected by the error, the
appellate court should consider everything in the record, including any testimony or physical
evidence admitted for the jury’s consideration, the nature of the evidence supporting the verdict, the
character of the alleged error and how it might be considered in connection with other evidence in
the case. Motilla, 78 S.W.3d at 355. We may also consider the jury instructions, the State’s theory
and any defensive theories, closing arguments, and even voir dire, if applicable. Id., at 355-56. We
may also consider whether the State emphasized the error. Id., at 356.
            One of the primary issues for the jury was whether it found E.G. credible. E.G. consistently
stated the nature of the abuse in her discussions with various adults prior to trial and in her testimony
before the jury. She told her caregivers and the jury that Appellant put his “private” in her “private”
on numerous occasions. E.G. also provided detailed descriptions of the sexual abuse in age-appropriate language. The trial court properly admitted Doyle’s expert testimony that the changes
to E.G.’s hymen indicated repeated penetration. In closing argument, the prosecutor emphasized the
properly admitted aspects of Doyle’s testimony, including the physical evidence, but she did not
mention Doyle’s opinion that a sexual assault had occurred. Under these circumstances, we find that
the error had little or no influence on the jury’s verdict because there is substantial evidence
supporting that verdict and the State did not emphasize the improperly admitted opinion testimony. 
Point of Error Three is overruled.
LEGAL SUFFICIENCY
            In his final point of error, Appellant challenges the legal sufficiency of the evidence
supporting the finding of guilt as to Count III which alleged that Appellant intentionally and knowing 
caused E.G.’s female sexual organ to contact his mouth. Appellant concedes that there is evidence
showing that his tongue contacted E.G.’s female sexual organ but there is no evidence of contact by
his mouth.
Standard of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). This familiar
standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts.
Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact
or assign credibility to the witnesses, as it was the function of the trier of fact to do so. See Adelman
v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and implicit
findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most
favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of
review is the same for both direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
Elements of Aggravated Sexual Assault and
Review of the Evidence
            A person commits aggravated sexual assault if he intentionally or knowingly causes the
sexual organ of a child to contact the mouth of another person, including the actor. Tex.Penal
Code Ann. § 22.021(a)(1)(B)(iii)(Vernon Supp. 2004-05). Count III of the indictment and the
application paragraph of the court’s charge tracked the language of the statute. Appellant argues that
the evidence showing his tongue contacted E.G.’s sexual organ is insufficient to prove contact by
his mouth. 
            The Dallas Court of Appeals addressed the same issue and determined that the Legislature
intended the word “mouth” to include its parts, such as the teeth and tongue. See Montoya v. State,
841 S.W.2d 419, 422 (Tex.App.--Dallas 1992), rev’d on other grounds, 906 S.W.2d 528
(Tex.Crim.App. 1995). 
The statute does not define mouth and we have not found any case law defining
mouth as used in the statute. Both parties cite us to versions of Webster’s Dictionary.
A ‘mouth’ is ‘the cavity bounded externally by the lips and internally by the pharynx
that encloses in the typical vertebrate the tongue, gums, and teeth.’ Webster’s New
Collegiate Dictionary (9th ed. 1985). If we limit mouth to the cavity containing
the tongue, gum, and teeth, then we defeat the intent of the statute because a cavity
cannot make contact with another object or person as required under the statute. 
Common sense and common usage leads us to conclude that the legislature intended
the word ‘mouth’ to include its parts, such as the teeth and tongue.

Montoya, 841 S.W.2d at 422.

            Following Montoya’s reasoning, the First Court of Appeals has also rejected an argument that
the evidence was insufficient prove an offense under the statute since the indictment alleged and the
proof showed contact by the defendant’s tongue. Johnson v. State, 882 S.W.2d 39, 41 (Tex.App.--Houston [1st Dist.] 1994, pet. ref’d). We likewise agree that common sense requires that the word
“mouth” as used in Section 22.021(a)(1)(B)(iii) must be read to include its parts such as the tongue. 
Therefore, the evidence showing that Appellant contacted E.G.’s sexual organ with his tongue is
legally sufficient to support the jury’s verdict as to Count III. Point of Error Four is overruled. 
Having overruled all points of error raised on appeal, we affirm the judgment of the trial court.


May 31, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)