**Denise DIXON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–93–164 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted Aug. 25, 1994.

Nov. 9, 1994.

J. Lynn Martin, Conroe, for appellant.

Daniel C. Rice, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

The appellant was indicted on five counts for the offenses of aggravated sexual assaults. The indictment was returned on or about February 3, 1993. The events upon which the prosecution was based allegedly occurred on or about June 8, 1991, and July of 1991 in Montgomery County. The jury found that the appellant was guilty on all five counts of the indictment. The court assessed punishment on each of the five counts at 75 years confinement in the Institutional Division of the Texas Department of Criminal Justice. The five sentences were ordered to be served on a concurrent basis.

The two alleged victims were T.D., aged about seven, and C.D., aged about eight. T.D. and C.D. were the daughters of the appellant. At the time of the alleged offenses, the appellant was living at a certain motel in Conroe with her two daughters (the alleged victims) and a third daughter. C.D., whose age was about eight years, testified that the appellant, Denise Dixon, being C.D.'s mother, had forced C.D. to perform certain sexual acts on the appellant during a certain time period, including June 8, 1991. These alleged sexual acts or activities said to have been performed by the appellant, the mother, were described as the inserting of a dildo inside of C.D.'s vagina and the mother placing her mouth on C.D.'s vagina during which time the mother allegedly inserted her tongue. Then, allegedly, the appellant forced C.D. to place C.D.'s mouth on the appellant's vagina and insert her tongue into the appellant's vagina.

T.D. was the younger daughter. T.D. testified that the appellant had placed the appellant's mouth on T.D.'s vagina and then that the appellant had forced T.D. to reciprocate by placing T.D.'s mouth on the appellant's vagina.

In addition to this evidence, having been brought forth by the two minor complainants, the prosecution also presented the third daughter as an eye-witness to the abuse of C.D. with the dildo. An outcry witness testified as well as the complainants' counselor. There were other witnesses. The appellant stoutly denied performing any such sexual acts on her two minor daughters. Appellant contended that she did touch her minor daughters in their vaginal areas but only to treat them for insect bites and impetigo. Appellant presented certain medical records concerning C.D. showing that C.D. had been receiving treatment since birth for a labia fusion. Apparently, the labia had to be surgically opened to facilitate urination.

The basic thrust of the appellant's defense was two-fold in nature. The first theory of defense was that the appellant was simply innocent of any wrong acts or, secondly and in the alternative, if she happened to be guilty at all then she was guilty only of touching these small children's female, sexual organs.

■ The appellant's first point of error advances this: that Count II and Count V of the indictment should be reversed because they allege an impossible offense or an impossible crime. Count II in substance alleged that the appellant intentionally and knowingly caused the penetration of the mouth of C.D., a child who was younger than fourteen years of age, by the defendant's sexual organ. Count V alleged that the defendant intentionally and knowingly caused the penetration of the mouth of T.D., the younger child, by the defendant's sexual organ.

Both of the alleged victims and the appellant are females. The appellant argues and basically contends that it is a physical impossibility to cause a female sexual organ to penetrate another person's mouth. The record before us shows that C.D. testified at considerable length concerning the acts performed by her mother. C.D. testified about the mother touching C.D. in her private area which was, according to the record, her vagina. C.D. testified about other detailed acts using dolls. C.D. swore that her own mother put the mouth of the mother on C.D.'s private area. These actions were demonstrated with two dolls. At this time when this mouth contact took place, C.D.'s clothes would be off. The record shows:

Q Okay, were her legs up there by your face?

A Yes.

Q Okay. What was she doing here, was she just—

A —She was licking my private area.

Q Okay. Did she do anything with her tongue?

A Yes.

Q What did she do?

A She would wiggle it around inside.

Q Inside of you?

A Uh-huh.

Q Did that happen at the Motel 6 there in Conroe?

A Yes.

. . . .

Q And how old were you there, then?

A I was about six or seven.

Q Did you do this willingly, did you want to do this with your mother?

A No.

Q Did she make you do this?

A Yes.

Q How did she make you do this?

A She used to—I used to cry a lot and scream and wiggle around and she would pull my hair or slap me.

This young girl, C.D., testified further that her own mother made C.D. do something to the mother.

Q What did she make you do?

A She made me lick her private area.

Q And how would you do that?

A Then, I would get down on her private area, put my mouth on her private area like she told me to.

Q Okay. Did she make you do what she did to you?

A Yes.

Q Did she—did you do something with your tongue?

A Yes.

Q What did you do?

A I wiggle it around inside.

When C.D. was asked if there was anyone else around when these events happened, she answered yes. Some friends of her mom's would be around; also some boys and girls. In other words, the friends of mom watched these exhibitions and C.D. was very embarrassed. But the mom and the spectators would be laughing. C.D. said she wanted to get up from these exhibitions but that her mom wouldn't let her and that her mom threatened her saying in substance that if C.D. didn't stay still or listen to her that she (the mother) would kill C.D. any way she had to. C.D. believed that her mother would and could do that.

C.D. described a dildo. She called it a "dick" and she also called it a penis. The mother of C.D. had a dildo in the motel room. In fact, according to the record, the mother had more than one dildo. C.D. testified that some of the dildos were white and some were black and that the mother put a dildo into C.D.'s private area. She demonstrated this event with dolls. Before the dildo episodes, the mother ripped the clothes off C.D.—buttons and all.

T.D., the younger daughter, testified that her own mother put her mouth on T.D.'s vagina. T.D. testified using dolls. She described on the dolls where her own vagina was. She sometimes referred to this as her "privates". T.D. testified:

Q Okay. Now then, will you tell these people over here what happened at Motel 6 between your mother and you? Did she put something on your vagina?

A Yes.

Q That you didn't like?

A Yes.

Q Was it a part of her body?

A Yes.

Q What part of her body was it, [T.]?

A Sometimes her mouth.

Q Was—she sometimes put her mouth on your vagina, [T.], would she sometimes put her mouth on your vagina?

A Yes.

Q When her mouth was on your vagina, did anything ever go inside your vagina?

A No.

Q Okay. Would your mother ever make you do anything to her that you didn't like?

A Say that again.

Q Would your mother ever make you do anything to her that you didn't like?

A Yes.

Q And what would she make you do, [T.]?

A She made me put my mouth on hers.

Q On her vagina?

A Yes.

Q Okay. Now, [T.], [T.], can you look at me? Is that what really happened in Motel 6?

A Yes.

Q Okay.

■ Appellant argues in substance that it would be difficult, if not actually physically impossible, for the adult female sexual organ to pass into or through the victim's mouth. However, the appellant did not lodge an objection or exception to the indictment before going to trial. TEX. CONST. Art. V, § 12(b) provides in relevant part that the practices and procedures relating to the use of indictments, including their contents, their amendments, their sufficiencies, and requisites, are as provided by law.

TEX.CODE CRIM.PROC.ANN. art. 1.14(b) (Vernon Supp.1994) provides in relevant part in substance that if an accused does not object to a defect or error or irregularity of form or substance in an indictment before the date on which the trial on the merits commences, the defendant waives and forfeits the right to object to that defect, error, or irregularity and the defendant may not raise the objection on appeal or in any other postconviction proceedings. Also, TEX.CODE CRIM.PROC. ANN. art. 27.08 (Vernon 1989) provides that

there are few exceptions to the substance of the indictment and then the exceptions are very stringent and limited. The appellant on appeal objects to a substance defect, as defined under art. 27.08(1) of the Code. In other words, the appellant argues that Count II and Count V charge an impossible offense and therefore, it does not and could not appear that an offense against the law was committed by the appellant. Appellant cannot raise this type of objection on appeal.

Moreover, TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(ii), (2)(B) (Vernon 1994) provides that a person commits an offense if the person intentionally or knowingly causes the penetration of the mouth of another person by the sexual organ of the actor without that person's consent. And, further, that a person commits an offense if the person intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor, or causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.

And, a person commits an offense if a person by acts or words threatens to cause death or serious bodily injury and the victim is younger than 14 years of age. An aggravated sexual assault under this same section is without the consent of the other person if the aggravated sexual assault occurs under the same circumstances listed in section 22.011(b). Under section 22.011(b), if the actor compels the other person to submit by threatening to use force or violence, or the victim is physically unable to resist, or that the actor compels the other person to submit or participate by threatening to use force or violence and the victim person believes that the actor has the ability to execute the threat, then a sexual assault occurs. In this section, child means a person younger than seventeen years of age who is not the spouse of the actor.

■ A basic standard of statutory construction is that a legislative enactment is to be construed in such a manner as to carry out the legislature's intention. *See Patterson v. State*, 769 S.W.2d 938 (Tex.Crim.App. 1989); *Montoya v. State*, 841 S.W.2d 419 (Tex.App.—Dallas 1992, pet. ref'd). Decisional precedents have held that the touching of or a penetration between the labia is sufficient and adequate to satisfy and sustain an indictment alleging touching or penetration of the female sexual organ. *See and compare Vernon v. State*, 841 S.W.2d 407 (Tex. Crim.App.1992).

Therefore, the penetration of the mouth of a child by the female sexual organ of the actor is here complete. The appellant argues in her brief that the penetration by the adult female sexual organ of the mouth of the child is a near impossibility. We conclude the record shows otherwise. C.D. necessarily had her own mouth open to wiggle her own tongue inside of the appellant's vagina since C.D.'s mouth was on the appellant's "private part", C.D.'s tongue was inside of the appellant's vaginal opening and therefore, the appellant's labia would have been in C.D.'s mouth. TEX.PENAL CODE ANN. § 22.011 (Vernon 1994). We overrule appellant's point of error number one. We hold that Counts II and V of the indictment properly alleged an offense. The appellant made no objection before trial date.

■ The appellant briefs point of error number two stating that the evidence was insufficient to support the verdict and conviction under Counts II and V. In making a review and an analysis concerning the sufficiency of the evidence to determine whether the State has proved an element of the offense, an intermediate appellate court is required to look at all the evidence in the light that is most favorable to the verdict and determine whether any rational trier of fact could have believed the element was established beyond a reasonable doubt. However, we are not to sit as a thirteenth juror or as a super jury attempting to reweigh and reanalyze the evidence. We are to test the evidence to see if it is conclusive enough for a reasonable factfinder to believe, based on the evidence, that the element was and is established beyond a reasonable doubt. *See and compare Villalon v. State*, 791 S.W.2d 130 (Tex.Crim.App.1990).

Count II alleges that the appellant penetrated the mouth of her own daughter, C.D., with the appellant's female sexual organs.

As noted above, C.D. testified that her own mother made C.D. get down on her private area and made C.D. lick it and made C.D. put her mouth on the appellant's vagina and wiggle C.D.'s tongue inside. Therefore, C.D.'s mouth had to be open in order to accomplish this aberrant act with C.D.'s tongue, all within the appellant's vagina, and thereafter wiggle C.D.'s tongue inside. We conclude that a rational trier of fact could find, therefore, that C.D.'s mouth was open and that her lips pressed against the appellant's vaginal opening and that the appellant's labia would penetrate C.D.'s mouth.

 Count V of the indictment alleged that the appellant penetrated the mouth of her younger daughter, T.D., with the appellant's female sexual organ. T.D. definitely testified that the appellant did things to T.D. that T.D. did not like. At first T.D. stated "she had sex". Then T.D. explained that the appellant would put her own mouth on T.D.'s vagina and that the appellant would then place T.D.'s mouth on the appellant's vagina. Using an anatomically correct doll, T.D. showed that the appellant put her mouth "right there", pointing to the genital area of the anatomically correct doll. Clearly, penetration may be proved by circumstantial evidence. We determine that the evidence before us is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element of penetration of T.D.'s mouth was established beyond a reasonable doubt. Appellant's point of error two is overruled.

 Point of error number three states that the trial court abused its discretion by refusing the appellant's request to include the lesser included offense of indecency with a child in the charge of the court to the jury. In the recent case of *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.1993), the Court of Criminal Appeals clarified the two-prong test of *Royster v. State*, 622 S.W.2d 442 (Tex.Crim.App.1981), to determine whether an accused is entitled to a jury charge on a lesser included offense. In *Rousseau*, the Court of Criminal Appeals speaking through Judge Maloney concluded:

> We think that by similarly tieing the "guilty only" language in the *Royster* test to the rational findings of a jury, the roles of court and jury will be better understood in applying *Royster*. It becomes apparent that the appropriate test to be applied in determining whether a defendant is entitled to a charge on a lesser included offense is the following:
>
> > first, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense.

(emphasis on portion added to *Royster* test). In applying the two-prong test, the trial court should make a determination as to whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty only of that offense, and not the greater offense.

*See* TEX.CODE CRIM.PROC.ANN. art. 37.09 (Vernon 1981) dealing with lesser included offenses.

The gravamen of the appellant's arguments here is that even though her acts in touching her children might have been proved, these acts did not culminate in penetration. The appellant insisted that the acts did not include any degree of penetration.

The appellant's own testimony is penetrating and determinative of this point of error. Under this record, the appellant denied any sexual conduct or sexual contact with her two young daughters. Appellant did testify on direct that she put certain salves, medicines or ointments, on C.D. during the summer of 1991.

In the record appellant testified:

Q Okay. Were you putting any salves or medicines or ointments on her during the summer of 1991?

A Yes.

Q Denise, other than that, did you ever touch your girls in any way sexually?

A No.

Q Did you ever force them to touch you sexually?

A No.

Q During that spring and summer were you—did you have plenty of money?

A No, not really plenty, no.

. . . .

Q (By Mr. Moreland) Denise, have you ever had any sexual relations with your children?

A No.

Q Have you ever had any experience where you, where you think someone else was having sexual relations with your children?

A No.

The appellant further gave testimony on cross-examination to this effect:

Q Did they tell you you were accused of licking the vaginas of [T.] and [C.] and of putting a dildo in [C.]'s vagina?

A Yes.

Q Weren't you interested in finding out what they said, how that happened? Where it happened?

A Yes, I was interested.

Q But you didn't do anything?

A I didn't know it was my right to do anything.

Q You had at least one dildo in the Motel 6 with you, didn't you?

A No, I did not.

Q How many did you have there?

A None.

Q Do you know what a dildo is?

A Somewhat, yes.

Q What is it?

A It's an artificial penis.

Q Have you ever seen one?

A Yes.

Q Where did you see it?

A I don't think I can say.

Q I think you can.

A In my mother-in-law's bedroom.

The appellant denied that the children had ever done anything to her sexually.

Q Did they ever try to touch you or ask you what that felt like?

A (She shakes her head no.) Ask me what what felt like?

Q Putting a finger in somebody's vagina, using a dildo, anything like that.

A They never saw those things. So why would they ask what it felt like?

Q Isn't that something? And then why would they ever accuse you of something like that? Did you ever let them watch you and a boy friend or something have sex?

A No.

On further cross-examination appellant testified to this:

Q Did you ever have anybody in the room with you there, a male partner?

A At Motel 6?

Q Uh-huh.

A C.J. was there.

Q Tony was there too, wasn't—

A And Tony was there.

Q You were sleeping with Tony?

A Well, we had two separate rooms.

Q I thought the girls were in one room and you and Tony were in the other room.

A That's what I am saying. How could they have watched when they were in another room?

Q And the rooms didn't connect?

A No, they weren't adjoining rooms, no.

Q I don't know how this could have happened. Did they ever see you masturbating?

A No.

Q Maybe you let them look at some magazines that you shouldn't have. Did you ever let them look at something pornographic, a video, a magazine and maybe they got the ideas from that?

A There was a one time, a long time ago, I think when [C.] was real small.

Q You think that just stayed with her maybe?

A She got ahold of a magazine of her father's.

Q This was [C.]?

A Yes.

Q You think maybe that image just stayed with her all those years and she

went ahead and told [C.] and [J.] about it?

A I don't know, it's a possibility.

Q Was [C.]'s bottom hard to get at because she was struggling to get away from you?

A Definitely.

Q You talked yesterday about applying medication.

A Yes.

Q Was the medication going to open up the labia?

A Actually, the doctors already opened it.

Appellant's basic testimony and contention was that she committed no offense at all. Therefore, charge of the lesser offense of indecency with a child is not either required or proper. *See and compare Aguilar v. State,* 682 S.W.2d 556 (Tex.Crim.App.1985).

C.D. identified her mom as the appellant. C.D. in detail described how, while living at Motel 6 in Conroe, the appellant touched her in her private area with appellant's fingers. C.D. testified that the appellant also put the appellant's mouth on C.D.'s private area and demonstrated the appellant's action with an anatomically correct doll. C.D. undressed the dolls, laid the doll that was C.D. on its back and put the doll that was the appellant on top. The dolls' heads were in opposite directions.

C.D. testified that appellant was licking her private parts and would wiggle appellant's tongue inside of C.D. C.D. also testified that the appellant would make C.D. go down on her private area and make C.D. lick it.

Sometimes these bizarre incidents would occur in front of the appellant's friends who would all be laughing to the great embarrassment of C.D. Then when C.D. would try to get up the appellant would not let her up, saying to C.D., "if you don't stay still, or listen to me, I will kill you any way I have to." C.D. believed that the appellant would kill her, so she did what the appellant told her to do. C.D. further testified that the appellant would strap the dildo on and then push the dildo into C.D.'s vagina. If C.D. screamed enough and cried out loud enough the appellant would stop with the dildo, but only if C.D. had a rash. The record reveals that if C.D. did not have a rash and was not crying hard enough, then the appellant would keep pushing the dildo harder and harder and sometimes the appellant would slap C.D. and pull C.D.'s hair.

Under this record the appellant was not entitled to a charge on the lesser included offense of indecency with a child. We overrule appellant's point of error three. The judgment and the sentence below is affirmed.

AFFIRMED.