

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00078-CR

_____

DAVID ROY MUNDT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR24-218

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

Appellant, David Roy Mundt, was convicted of two counts of aggravated sexual assault of a child younger than fourteen years of age for which he was sentenced to life for each count to run consecutively. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (Supp.). In three issues on appeal, Mundt argues that (1) the trial court erred in denying his motion to suppress, (2) the evidence was insufficient to support count two of the indictment, and (3) the trial court erred in stacking his sentences. We find no error in the trial court's denial of the motion to suppress, and we hold the evidence was sufficient to support the jury's conviction on count two of the indictment. However, as the State concedes, we find that the trial court erred in stacking the life sentences, and we modify the judgments to reflect that the sentences shall run concurrently to each other. Accordingly, we affirm the judgments as modified.

## I.      Motion to Suppress

### A.      Standard of Review

"We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard." *Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021). "We give almost total deference to the trial court's findings of fact and review *de novo* the application of the law to the facts." *Id.* (quoting *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019)). "When a trial judge makes express findings of fact, an appellate court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record." *Id.* (quoting *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017)). When a trial court does not make explicit findings, as is the case here, "courts must defer not only to all

2

implicit factual findings that the record will support in favor of [the] trial court's ruling, 'but also to the drawing of reasonable inferences from the facts.'" *Amador v. State*, 221 S.W.3d 666, 674–75 (Tex. Crim. App. 2007) (footnote omitted) (citations omitted) (quoting *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005)). "We will uphold the trial court's ruling if it is correct under any applicable theory of law and the record reasonably supports it." *Martin*, 620 S.W.3d at 759.

## B.      Evidence at the Motion to Suppress Hearing

On July 22, 2024, Mundt was arrested for outstanding traffic tickets and booked into the county jail. Julia Alexander, a certified medical technician who worked for the Gregg County Jail, testified that she evaluated Mundt at the county jail when he was booked in as part of a standard protocol when an inmate makes a medical complaint. When a medical complaint is received, the individual must be evaluated to determine if they are stable enough to be booked into jail. Alexander stated that the evaluation involves checking the individual's vital signs, blood pressure, and temperature. The individual's temperature is taken via a probe that is attached to a rolling medical cart. For each use, a single-use plastic sleeve is placed over the probe before taking the individual's temperature.

Alexander testified that she took Mundt's temperature using the probe covered with a plastic sleeve, and after doing so, she intended to discard the sleeve. A deputy then requested the sleeve from Alexander, and she turned it over to him. Alexander explained that the sleeve would have been discarded.

The trial court denied Mundt's motion to suppress.

3

**C.      Analysis**

Mundt argues that his "DNA was illegally taken and without his consent under both the Texas and Federal Constitution," stating that "there was an invasion of his privacy by taking the sleeve, also establishing 'a warrantless taking in violation of the Fourth Amendment and the Texas Constitution.'"   In his motion to suppress, Mundt argued, "The protective cap was discarded without the consent of Mr. Mundt and then used to obtain Mr. Mundt's DNA without his consent.  Mr. Mundt was unable to voluntarily discard the protective cap and did not give consent to offer a sample of his DNA."

"A person has 'standing' to contend that a search or seizure was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as 'reasonable' or 'legitimate.'"  *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014) (citing *Minnesota v. Olson*, 495 U.S. 91, 95–97 (1990) ("an overnight guest in another's home has a legitimate privacy interest in that premises and thus may challenge its search"); *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004) ("Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded.  He must prove that he was a 'victim' of the unlawful search or seizure.  He has no standing to complain about the invasion of someone else's personal rights.") (footnotes omitted) (citations omitted))).

4

Texas courts have examined a variety of factors when determining whether someone has an objectively reasonable expectation of privacy. *Long v. State*, 535 S.W.3d 511, 529 (Tex. Crim. App. 2017). Those factors include whether:

(1)     the person had a proprietary or possessory interest in the place searched;

(2)     the person's presence in or on the place searched was legitimate;

(3)     the person had a right to exclude others from the place;

(4)     the person took normal precautions, prior to the search, which are customarily taken to protect privacy in the place;

(5)     the place searched was put to a private use; and

(6)     the person' s claim of privacy is consistent with historical notions of privacy.

*Id.* However, these factors are not exhaustive, and none alone is dispositive; instead, "we examine the circumstances in their totality." *Id.*

A defendant has the burden to prove that a legitimate expectation of privacy existed and must do so by demonstrating that (1) by his conduct, he exhibited an actual intention "to preserve [something] as private," and (2) this "subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *Oles v. State*, 993 S.W.2d 103, 108 (Tex. Crim. App. 1999) (alteration in original) (quoting *Katz v. United States*, 389 U.S. 347, 351, 361 (1967) (Harlan, J., concurring)).

"However, the collection of DNA from prisoners has been found to be reasonable in light of an inmate's diminished privacy rights, the minimal intrusion involved, and the legitimate government interest in using DNA to investigate crime." *Pollard v. State*, 392 S.W.3d 785, 797

5

(Tex. App.—Waco 2012, pet. ref'd) (citing *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984) ("[W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell . . . . The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." (alteration in original)); *Groceman v. U.S. Dep't of Just.*, 354 F.3d 411, 413 (5th Cir. 2004) (per curiam); *Velasquez v. Woods*, 329 F.3d 420, 421 (5th Cir. 2003) (per curiam) ("holding that the collection of DNA samples from felons does not violate the Fourth Amendment"); *Oles*, 993 S.W.2d at 108 ("While an appellant is incarcerated, he has no expectation of privacy in the jail cell . . . ." (alteration in original)); *Drewery v. State*, No. 08-04-00201-CR, 2005 WL 1791630, at *7–8, (Tex. App.—El Paso July 28, 2005, pet. ref'd) (not designated for publication)).

In the present case, Mundt, an arrestee at the time, did not refuse to have his vitals checked, which included having his temperature checked. Mundt has presented no evidence that he made any attempt to secure the single-use thermometer sleeve. "[T]herefore, in this instance, he did not demonstrate a genuine intention to keep his DNA private." *Pollard*, 392 S.W.3d at 798 (citing *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997) ("[A]bandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances, with the issue not being in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."); *Brimage v. State*, 918 S.W.2d 466, 507 (Tex. Crim. App.

6

1996) (op. on reh'g) ("We have held that an abandonment of property occurs if (1) the defendant intended to abandon the property and (2) his decision to abandon the property was not due to police misconduct."); *Hawkins v. State*, 758 S.W.2d 255, 257 (Tex. Crim. App. 1988) ("The general rule in Texas with respect to abandoned property has been that 'when police take possession of abandoned property, there is not a seizure under the Fourth Amendment.'" (quoting *Clapp v. State*, 639 S.W.2d 949, 953 (Tex. Crim. App. 1982), *overruled by Comer v. State*, 754 S.W.2d 656, 659 (Tex. Crim. App. 1988) (op. on reh'g))); *Hudson v. State*, 205 S.W.3d 600, 604–05 (Tex. App.—Waco 2006, pet. ref'd) ("holding that the warrantless seizure of a defendant's DNA from a Dr. Pepper can that was voluntarily thrown in the trash did not violate the Fourth Amendment because the defendant's action of throwing the can in the trash indicated an intent to abandon the can")).

Because Mundt presented no evidence of his intention to maintain control over the thermometer probe, his diminished expectation of privacy rights during confinement, "the minimal intrusion involved, and the legitimate government interest in using DNA to investigate crime," we hold that Mundt failed to meet his burden to establish a legitimate expectation of privacy in either the thermometer sleeve or his own DNA. *See id.* (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (plurality op.)). "Accordingly, we cannot say that the trial court abused its discretion in denying [Mundt]'s motion to suppress the seizure of his DNA from the [thermometer sleeve] . . . ." *Id.* (citing *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)). We overrule Mundt's first issue.

## II. Sufficiency of the Evidence as to Count Two

By his second issue, Mundt first challenges the sufficiency of the evidence to support count two of his conviction "because the State failed to prove penetration." The State's indictment on count two alleged that Mundt "intentionally and knowingly caused the penetration of sexual organ or anus of . . . a child, who was younger than 14 years of age, by the sexual organ, of another person, including the defendant."

### A. Standard of Review and Applicable Law

"When reviewing the legal sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Hiatt v. State*, 319 S.W.3d 115, 119 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). "This standard accounts for the factfinder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Clayton*, 235 S.W.3d at 778 (quoting *Jackson*, 443 U.S. at 319). "Thus, 'in analyzing legal sufficiency, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."'" *Hiatt*, 319 S.W.3d at 119 (quoting *Clayton*, 235 S.W.3d at 778).

"Under a legal sufficiency review, 'our role is not to become a thirteenth juror. This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder.'" *Williams v. State*, 235 S.W.3d 742, 750

8

(Tex. Crim. App. 2007) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)). "The State has no burden to produce any corroborating or physical evidence." *Moore v. State*, No. 10-23-00231-CR, 2025 WL 2170354, at *3 (Tex. App.—Waco July 31, 2025, pet ref'd) (mem. op., not designated for publication) (citing *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006))). "The child need not directly and explicitly testify as to contact or penetration with the same clarity and ability of an adult witness to prove these facts beyond a reasonable doubt." *Prestiano v. State*, 581 S.W.3d 935, 941 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (citing *Villalon v. State*, 791 S.W.2d 130, 133–35 (Tex. Crim. App. 1990)).

The Texas Court of Criminal Appeals has stated,

> [S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

At the time of the offense in 1992, the Texas Penal Code required proof of penetration. *See* Act of July 18, 1987, 70th Leg., 2d C.S., ch. 16, § 1, 1987 Tex. Gen. Laws, 80, 80 (amended 1997, 2003, 2017) (current version at TEX. PENAL CODE § 22.021(a)) "'Penetration' is not defined by statute. The Court of Criminal Appeals has therefore afforded this term its ordinary meaning in the context of aggravated sexual assault, noting that it means 'to enter into' or 'to

pass through.'" *Prestiano*, 581 S.W.3d at 941–42 (quoting *Green v. State*, 476 S.W.3d 440, 447 (Tex. Crim. App. 2015) (quoting *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992))). "This definition distinguishes penetration from 'mere contact with the outside of an object.'" *Id.* at 942 (citing *Vernon*, 841 S.W.2d at 409; *accord Villa v. State*, 417 S.W.3d 455, 461–62 (Tex. Crim. App. 2013)). "Penetration of the mouth thus occurs whenever an object parts the lips and passes into or through them." *Id.* (citing *Dixon v. State*, 886 S.W.2d 852, 856 (Tex. App.—Beaumont 1994, pet. ref'd) ("female defendant who forced child to perform oral sex on her penetrated child's mouth with her sexual organ as her labia was in child's mouth"); *Vernon*, 841 S.W.2d at 408–10 ("evidence that defendant inserted finger into child's outer labia but not into vagina sufficed to prove penetration"); *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976) ("insertion of penis between labia suffices to show penetration even if vagina not entered")).

**B.    Analysis**

The victim, N.M., was seven years old at the time of the incident in 1992.  At trial, N.M. testified that she recalls being picked up and carried out of bed "like a baby" and assumed it was her mother, but when she opened her eyes, it was a man she did not recognize.  When she tried to scream, the man covered her mouth and nose, making it hard to breathe.  He then carried N.M. outside to her backyard.  She recalled it felt cool outside and it was starting to become daylight.  Before the man removed his hand from her mouth, he threatened her not to make any noise or he would "hurt or kill [her] and [her] family."  The man had her "get on all fours," then removed her underwear and pushed up her nightgown.  N.M. testified that, "[She] didn't know what was

10

really happening. [She] thought he was kissing [her] private parts. He was just rubbing [her] and kissing. And [she] think[s] he got scared possibly or heard a noise or something because very abruptly he ran off." She explained that as an adult, she now understands what happened and indicated that the man "also put his penis on [her] privates," indicating both her vagina and anus. She testified that she is "confident" that the man "rubbed specifically his penis" on her private parts.

Jane Roy worked as an emergency room nurse when N.M. was brought in for her sexual assault examination. Roy testified that she assisted the doctor examine N.M. and noted that the doctor determined there was no penetration inside of N.M.'s vaginal canal "[b]ut in the area of her outer genitals, there was." The patient notes reflect that N.M. "denied any penetration," but the examination revealed redness on both sides of N.M.'s outer vaginal area, indicating penetration of the labia majora. When specifically asked by the State "whether it was obvious from this notation whether we had penetration of the labia majora," Roy answered affirmatively.

The State must prove all elements of the offense beyond a reasonable doubt. *Sherbert*, 531 S.W.2d at 637. Here, the State presented testimony from the emergency room nurse who assisted in the sexual assault examination, complete with medical records, which described a degree of redness, tenderness, and trauma on N.M.'s vagina consistent with the level of sexual abuse recounted by N.M. in her own testimony. While Mundt points to potentially conflicting testimony or testimony that would support mere touching or contact, rather than penetration, it was the jury's duty, as the sole fact-finder, to assess the credibility of the witnesses and to resolve any conflicts in the evidence or testimony. *See Zuniga v. State*, 551 S.W.3d 729, 733

11

(Tex. Crim. App. 2018).  We presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution.  *See Jackson*, 443 U.S. at 326.  A jury determines the credibility of the witnesses and may believe all, some, or none of the testimony.  *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  Considering the evidence described above, the State provided sufficient evidence to support the penetration element of count two against Mundt.  *See id.*  Mundt's second issue is overruled as it pertains to the sufficiency of the evidence.

### III.     The Jury Charge Did Not Create a Fatal Variance

Next, in his second issue, Mundt alleges that the jury charge "erroneously add[ed] 'contact or penetrate' in the [sic] Count II instead of just penetrate as the indictment alleged," thus "lowering the burden of proof."  Mundt contends that the jury charge failed to track the language of the indictment, creating a fatal variance requiring acquittal.

"The Court of Criminal Appeals has decreed that a materiality inquiry must be made in all cases involving a sufficiency of the evidence claim based on a variance between the indictment and the evidence."  *Rogers v. State*, 200 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002) (citing *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001)).  "Such a variance will be considered 'fatal,' and thus render the evidence insufficient, only when it is 'material.'"  *Id.* (citing *Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at 257).

"A variance is material if it (1) deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense, or (2) would subject him to the

risk of being prosecuted twice for the same offense." *Id.* (citing *Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at 257).

Mundt does not provide any argument that the alleged variance met either of the two materiality prongs but rather solely argues that the word "contact" in the charge "lowered the burden the State was required to prove." The jury charge states, under the relevant statutes section:

> As to Count II, a person commits an offense of Aggravated Sexual Assault of a Child, regardless of whether the person knows the age of the child at the time of the offense, if the person intentionally or knowingly causes the sexual organ or anus of a child to contact or penetrate the sexual organ of another person including the defendant.

However, the charge went on to define knowing and intentional penetration, not contact, and the jury was instructed to find that the State proved every element beyond a reasonable doubt as charged in the indictment, which alleged penetration only. Because Mundt does not show how this language either deprived him of notice of the charges against him or created a risk of being prosecuted twice, we do not find a material variance. *See Gollihar*, 46 S.W.3d at 257. Further, to the extent his argument is there was error in the jury charge, Mundt did not present any argument regarding egregious harm and therefore did not carry his burden on appeal. *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) ("An appellant may raise such unobjected-to charge error on appeal, but may not obtain a reversal for such error unless it resulted in egregious harm."). We overrule Mundt's second issue as it relates to the jury charge.

13

## IV. Improperly Stacked Sentences

The State concedes that Mundt's two life sentences cannot be stacked but rather should run concurrently. "In 1997, the Legislature amended Section 3.03 to authorize stacked sentences for convictions for aggravated sexual assault." *Ex parte Bahena*, 195 S.W.3d 704, 705 (Tex. Crim. App. 2006) (orig proceeding) (citing Acts 1997, 75th Leg., R.S., ch. 667, Sections 2(b), 8, p. 2251, 2253, eff. Sept. 1, 1997 (currently codified in TEX. PENAL CODE § 3.03(b)(2-a))).

> These 1997 amendments became effective September 1, 1997, and they provided that the change in law "applies only to an offense committed on or after the effective date of this Act" and that an "offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose."

*Id.* (citing Acts 1997, 75th Leg., R.S., ch. 667, Section 7(a), (b), p. 2252–53). Here, the offense occurred in 1992, as alleged in the indictment. Accordingly, Mundt's two life sentences were erroneously stacked. Accordingly, the proper remedy is to delete the cumulation order from the judgment and reform the judgments to reflect that Mundt's life sentences shall run concurrently. *See Beedy v. State*, 250 S.W.3d 107, 113–14 (Tex. Crim. App. 2008) (proper remedy for a cumulation order that is entered without lawful authority is simply to delete it from the judgment). Mundt's third issue is sustained.

## V.    Conclusion

We modify the trial court's judgments in both counts to delete that portion which states Mundt's sentences are to run "CONSECUTIVELY," and we modify that section to reflect the sentences shall run "CONCURRENTLY."  As modified, we affirm the judgments of the trial court.


Charles van Cleef
Justice

Date Submitted:     January 27, 2026
Date Decided:        March 6, 2026

Do Not Publish